## THE STATE VS. HENRY HAMLIN AND OTHERS.

An indictment for murder charged in one count three defendants as principals, and in another two as principals and the third as an accessory before the fact. Held to be no misjoinder of counts.

But if two such counts could not be properly joined, the misjoinder could not be taken advantage of by motion in arrest of judgment, or on error.

Under our statute, accessories before the fact may be prosecuted and punished as if they were principals.

It is not the right of a person against whom a charge of crime is pending before a grand jury to be present at the examination of the witnesses.

Whether individual members of a grand jury may be challenged for favor before they are sworn: *Quære.*

The expression of an opinion that an accused person is guilty by a grand juror before he was sworn, appears never to have been a ground of challenge in the English courts. Some respectable authorities in this country hold that it is, but these generally hold that the exception must be taken before the grand juror is sworn.

The common law requires grand jurors to be good and lawful freeholders and inhabitants of the county; and where that law prevails a disqualified grand juror may be challenged before indictment found.

In this state the qualifications of grand jurors are prescribed by statute, as also the mode of summoning them, and the oath to be taken. But the statutes contain no provision for challenging them, and there has never been a practice of doing it.

If a disqualification discovered after indictment found can be taken advantage of, it must be one that is pronounced such by the common law, or by the statute (if it be a matter of statute), and one that absolutely disqualifies, as alienage or the want of a freehold.

One of several defendants indicted by a grand jury pleaded in abatement that there were not twelve members of the grand jury who were in favor of finding a true bill against him, but that the foreman stated to them that they could not find a true bill against the others unless they included him, and that his name was included because the grand jurors thought it necessary in finding a true bill against the others. The State's Attorney demurred to this plea. Held 1. That the court could not allow any evidence as to the proceedings within the grand jury room, which, by their oath, the jurors were to keep secret. 2. That the State's Attorney had no right, by a demurrer, or in any other mode, to admit the facts alleged in the plea.

By statute murder is divided into two degrees, that perpetrated by any kind of willful, deliberate and premeditated killing being in the first degree, the indictment to allege the degree of the murder charged. Held that murder in the first degree could be charged either by adding to a common law indictment an allegation that it was murder of the first degree, or by alleging that the murder was committed willfully, deliberately and premeditatedly.

While it is a general rule that a demurrer to any pleading reaches back to the first defect and requires the court to render judgment against the party who

commits, in his pleading, the first substantial error, yet this rule does not apply to a demurrer to a plea in abatement.

INDICTMENT for murder, in the Superior Court of Hartford County. The indictment contained two counts, one charging the three defendants, Henry Hamlin, William Allen, and John H. Davis, as principals, with the murder of Wells Shipman; and the other charging Hamlin and Allen as principals and Davis as an accessory before the fact. In both counts the homicide was alleged to have been committed "feloniously, willfully, deliberately, premeditatedly, and of malice aforethought," but the degree of the murder was not otherwise stated.

The prisoners pleaded severally in abatement of the indictment, that of Davis being upon the following grounds:

1. That at the session of the grand jury when said indictment was found, he was in the custody of the court; that said indictment was heard, considered, and found by the grand jury at a session held by them on the 10th day of December, 1877, when he was not present; that he was anxious and desired to be present at their session that he might be confronted by his accusers and the witnesses, and examine the witnesses produced against him; that he and his counsel were ignorant of the holding of the session by said grand jury, and had no notice of their proceedings against him and no opportunity to be present; and that if he or his counsel had known that said session of said grand jury was to have been held as aforesaid, he would have made application to the court to be allowed to be present at the same.

2. That before and at the time when said grand jury took their inquisition and found said bill of indictment against the defendants, more than one-third of the members of said grand jury had formed and expressed opinions of the guilt of all the defendants of the offenses charged against them in said bill of indictment, and were unduly biased and prejudiced against them, and had become and were disqualified and incompetent to make a true presentment against them, and to fairly and impartially investigate the charges contained in

State *v.* Hamlin.

said bill against them, and to consider impartially the evidence produced before them in support of said charges.

3. That William Hamersley was the State's Attorney for said county before and at the time of the taking said inquisition, and of the finding of said bill, and as such officer drafted said bill of indictment and presented the same to said grand jury for their investigation, and produced the witnesses before them in support of the same, and had the charge and management of the prosecution against said defendants before said grand jury; and that George G. Sumner was summoned as one of the panel of said grand jury and acted as such in their said inquisition and finding, and was their foreman therein, as appears by his indorsement of the findings of said grand jury written upon said bill of indictment; and that for a long time before and at the time of the said inquisition and finding, the said Hamersley and the said Sumner occupied the same law-office in said Hartford as the place of their daily professional business as lawyers, and that in fact in said office said prosecution was prepared, said bill of indictment was drafted, said witnesses were examined, and the guilt of the defendants of the charges contained in said bill was talked over, claimed, and fully discussed by said Hamersley with and in the presence and hearing of said Sumner, whereby said Sumner became and was wholly influenced, biased and prejudiced against said defendants and each of them, and was wholly disqualified and incapacitated to act impartially as a member of said grand jury upon their said inquisition, and to preside over their deliberations and investigations therein as their foreman, and to take part in making any true presentment against them.

4. That at the August term, 1877, of said court, an indictment was duly presented against said Hamlin and Allen to a grand jury of this county, then duly summoned and convened, and by them found to be a true bill, for the same charges and offence as contained in the present indictment, to which said indictment at the same term of said court the said Hamlin and Allen were arraigned and put to plead; that at the present term of this court the State's Attorney entered a

*nolle prosequi* in said former indictment, and presented this present indictment against said Hamlin and Allen and the said Davis to the grand jury, who considered and heard said indictment, and found a true bill. That at the time said indictment was heard and considered by the grand jury, there were not twelve of the members on the panel of said grand jury who were in favor of finding a true bill upon the evidence offered on said indictment against the said Davis, and a number of the members on said panel desired to take a separate vote on the question of finding a true bill against him, the said Davis, on said indictment; but that the said Sumner was the only lawyer on the panel, and was elected foreman and presided over the deliberations of said grand jury, and as such foreman and presiding officer, illegally ruled that said indictment must be found a true bill against all of said defendants or none of them, and could not, as a matter of law, be found a true bill against said Hamlin and Allen, or either of them, and not a true bill as against said Davis, and refused to permit a separate vote to be taken on the question of finding a true bill or not against said Davis alone. Whereupon, the said grand jury, under such instructions as to the law and their duty, believing the evidence made it their duty to find a true bill against the said Allen and Hamlin, but not a true bill against him, the said Davis, in order to save said indictment and have a true bill found against said Allen and Hamlin, illegally and unjustly found a true bill against all the defendants, including him, the said Davis, when otherwise they would not have found a true bill against him, but would have found not a true bill as to him.

The plea of Hamlin and Allen set up the second and third grounds of abatement of the foregoing plea.

The State's Attorney demurred to these pleas, and the court held them insufficient, and ordered the defendants to answer over; upon which they all pleaded not guilty, and Hamlin and Davis elected to be tried by the court, (under the act of 1874, then in force but since repealed), and Allen elected to be tried by the jury. The two former were tried by *Park, C. J.,* and *Carpenter, J.,* and Hamlin found guilty of murder in the first

degree, and Davis of murder in the second degree. (The subsequent proceedings in the case of Allen are made the subject of a separate report.) Davis moved in arrest of judgment for the insufficiency of the indictment in not alleging the degree of the crime, which motion the court overruled. Both Hamlin and Davis then filed motions in error and brought the record before this court. The points assigned as errors will sufficiently appear from the briefs of their counsel and the opinion of the court.

*R. Welles* and *M. R. West*, with whom was *T. E. Steele,* for the plaintiffs in error.

1. In all cases where the accused is in the custody of the court, he has, by a rule established by a full court consisting of nine judges, the right to be present before the grand jury when they hear the evidence in his case, and put any proper questions to the witnesses. *Lung's case,* 1 Conn., 428. The directions to the grand jury prescribed in that case were in the nature of an adjudication binding in all cases until repealed or overruled by legislative or judicial action; they are correct in principle, in accordance with the spirit of our law, humane, and for the benefit of the citizen. The judges had the power to establish such a rule. Statutes, Comp. of 1808, tit. 42, ch. 15, sec. 2. The court say in *State v. Wolcott,* 21 Conn., 279, in speaking of the directions of the nine judges in *Lung's case,*—"Then this court adopted and published a *rule* in the form of a charge to the grand jury, by which counsel were not permitted to be present before them nor any witnesses on the part of the accused: and this rule has been followed ever since." Is only part of the rule in force? How much of it can be violated when a citizen is on trial for his life? The court further say, in the same case, "The *practice* in this state, so far as we are informed, from the *earliest times* has been, if the accused be in custody of the court, for the grand jury to *cause* him to be brought before them at the hearing, and perhaps also if he is out on bail and desires to be present." *State v. Fassett,* 16 Conn., 458, 469; 2 Swift Dig., 371; 1 Bishop Crim. Pro., § 745. It is the

duty of the court when the accused is in its custody to charge the grand jury according to the rule in *Lung's case*. *State* v. *Wolcott*, supra. The grand jury constitute a part of the court and are under its judicial control. 1 Bishop Crim. Pro., § 738; 1 Wharton Crim. Law, § 506. It is a cardinal principle in the administration of justice that a party to a cause shall have a day in court and an opportunity for a *full* hearing. *Ranney* v. *Edwards*, 17 Conn., 317. Justice demands that the accused should have the right from the time of his arrest to be present before any court or tribunal having jurisdiction of his case, at every session when it is heard.

2. The statute requires that the grand jury shall consist of eighteen electors of the county, twelve of whom must agree in order to present a true bill. Gen. Statutes, 536, § 3. If twelve of the grand jury did not concur in finding the bill, the fact may be shown by the testimony of the grand jurors themselves. *Low's case*, 4 Greenl., 439; 2 Greenl. Ev., § 22. The plea says, that more than one-third of the grand jurors had formed and expressed an opinion of the guilt of the accused, and. were unduly biased against them, and had become and were disqualified and incompetent to make a true presentment against them, or to fairly and impartially investigate the charges contained in the indictment. This being admitted by the demurrer, there were not twelve competent jurors in the panel. The grand jury as then constituted could not find a true bill. 1 Wharton Crim. Law, § 469; 1 Bishop Crim. Pro., §§ 723, 746.

3. The facts set forth in the third cause for abatement are sufficient to abate the indictment. The State's Attorney and one of the jurors occupied the same office as attorneys. The indictment was drawn up and the case prepared and talked over in their office in the presence of the juror. Had this been a civil action in which a farthing was at stake the juror could not have acted as a justice in the trial. Can he act in a cause involving the life of a citizen? If one juror is disqualified it affects the whole panel. 1 Bishop Crim. Pro., § 749; 1 Wharton Crim. Law, §§ 468, 472; *State* v. *Clough*, 49 Maine, 573.

State *v.* Hamlin.

4. The rulings of the foreman, and the proceedings of the grand jury under his rulings, as set forth in the fourth cause of abatement, are sufficient to abate the indictment. The foreman should have ruled that a true bill could be found against one or more of the accused and not a true bill as to the others. The effect of the ruling was to compel the jurors to find not a true bill against Hamlin and Allen when they believed them guilty, or to find a true bill against Davis with Hamlin and Allen when they did not believe him guilty, and when their duty and their oaths required them to find not a true bill as to Davis. Thus they must act contrary to what they believed to be right if they acted at all. Rather than find "not a true bill" against Hamlin and Allen, whom they believed to be guilty, they decided to find "a true bill" against Hamlin and Allen, including Davis, who they believed was not guilty. 1 Wharton Crim. Law, § 504; 1 Chitty Crim. Law, § 323; Arch. Crim. Prac. & Pl., § 310; 2 Hale P. C., 158; 2 Swift Dig., 372.

5. It is no answer to say we cannot enter the grand jury's room to prove these facts. The State has opened the door for the purposes of this trial. The accused alleges the disqualification of the grand jury. The State admits the allegation to be true, but says that it is insufficient to abate the indictment. The court has nothing to do with the truth or falsity of the plea, or whether it could or could not be proved. The whole question before the court is, is any one cause in the plea sufficient in law to abate the indictment. Gould Pl., ch. 4, § 45. But we can enter the grand jury's room in some cases and for some purposes. 2 Swift Dig., 372; 1 Wharton Crim. Law, §§ 508, 509. The accused may show that a witness testified differently before the grand jury. 2 Greenl. Ev., § 22; *Low's Case,* 4 Greenl., 439; *Commonwealth* v. *Hill,* 11 Cush., 137; *Commonwealth* v. *Mead,* 12 Gray, 167.

6. The indictment is defective in not alleging the degree of the murder. Bishop on Statutory Crimes, §§ 471, 473, 474; Wharton Crim. Law, § 1117; 2 Bishop Crim. Pro., § 584; *Finn* v. *The State,* 5 Ind., 400; *State* v. *McCormick,* 27 Iowa, 402; *State* v. *Jones,* 20 Misso., 58. The accused could not have been convicted under this indictment of murder in the

first degree unless he committed the act *willfully, deliberately,* and *premeditatedly.* These are the elements that constitute the crime. Wharton Crim. Law, § 1085. When the circumstances are a constituent part of the offence they must be set out. 2 Swift Dig., 374, 378, 379. Justice demanded that the accused should know the precise offense and the precise degree of crime claimed against him, so the legislature passed the act of 1870, which provided that in all indictments for murder the degree of the crime charged should be alleged. Acts of 1870, ch. 73. The *degree,* not the *elements,* of the crime must be alleged. This informed the accused of the *precise charge* against him; all the elements of the crime were required to be charged before. *State* v. *Smith,* 38 Conn., 397. The court cannot do away with an express requirement of the statute and thus in effect repeal it. It requires legislative not judicial action to dispense with it. Potter's Dwarris on Statutes, 79; Cooley's Const. Lim., 168.

7. As to the misjoinder of counts. At common law an accessory cannot be tried until after the conviction of the principal. 2 Swift Dig., 368; 1 Bishop Crim. Law, § 813; *Baron* v. *The People,* 1 Parker C. R., 246; *Commonwealth* v. *Phillips,* 16 Mass., 423. The crime of an accessory before the fact and the crime of a principal in murder are distinct felonies, and cannot be joined in different counts in the same indictment. 2 Swift Dig., 384, 401; 1 Bishop Crim. Law, § 813; *State* v. *Tuller,* 34 Conn., 280. The statute allows an accessory before the fact to be prosecuted as if he were the principal, but if the State proceed to prosecute him as an accessory under the common law form, the rules of the common law must govern, and he cannot be charged in the same indictment in one count as a principal and in another as an accessory in a felony.

8. The demurrer to the plea in abatement reaches back to and attaches itself to the first substantial defect in the proceedings, and consequently to the indictment. 1 Bishop Crim. Pro., § 456; Gould Pl., ch. 9, §§ 36 to 40; *Bishop* v. *Quintard,* 18 Conn., 395, 407.

*W. Hamersley,* State's Attorney, contra.

State v. Hamlin.

HOVEY, J. The defendants were jointly indicted by the grand jury' of Hartford County, for the willful, deliberate and premeditated murder of Wells Shipman, a night watchman in the state prison at Wethersfield. The indictment contained two counts. The first count charged all of the defendants as principals in the crime; the second charged the defendants Hamlin and Allen as principals, and the defendant Davis as an accessory before the fact.

The defendant Davis pleaded in abatement to the indictment, assigning as causes therefor, in substance:—

*First.* That he was not brought before the grand jury during their examination of the witnesses produced by the State against him, although he was then in the custody of the court.

*Second.* That more than one-third of the grand jury, before they were impaneled and sworn, had formed and expressed an opinion of the guilt of the defendants Hamlin and Allen, and had formed an opinion of the guilt of the defendant Davis, and were unduly biased and prejudiced against the defendants.

*Third.* That the foreman of the grand jury occupied the same law office with the State's Attorney, and that the guilt of the defendants had been talked over, claimed and discussed by said Attorney with and in the presence and hearing of the foreman, and that thereby the foreman had become biased and prejudiced against the defendants.

*Fourth.* That the indictment laid before the grand jury charged the three defendants jointly with the crime of murder; that there were not twelve members of the panel in favor of finding a true bill against the defendant Davis; that a number of members desired to take a separate vote upon the question of the defendant Davis's guilt, but the foreman of the jury ruled and decided, as matter of law, that a true bill could not be found against the defendants Hamlin and Allen, unless a true bill was also found against Davis, and refused to allow a separate vote to be taken upon the question of finding a true bill against Davis alone; and that the grand jury, believing that a true bill ought not to be found against Davis,

nevertheless found a true bill against him for the sake of finding a true bill against Hamlin and Allen.   The defendants Hamlin and Allen also pleaded in abatement the same matters which constitute the second and third causes of abatement assigned by the defendant Davis in his plea.

The State's Attorney demurred to these several pleas, and the court sustained the demurrers and ordered the defendants to answer over; and thereupon the defendants Hamlin and Davis severally pleaded not guilty to the charges contained in the indictment and elected to be tried by the court.   The defendant Allen pleaded not guilty and elected to be tried by the jury.   Trials were had accordingly.   And the court found and adjudged the defendant Hamlin to be guilty of murder in the first degree and the defendant Davis to be guilty of murder in the second degree.   The defendant Allen was also found guilty of murder in the first degree by the verdict of the jury.

The defendant Davis moved in arrest of judgment for the insufficiency of the indictment, and specially assigned as a ground for the motion that the degree of the crime charged in the indictment against him and the other defendants is not alleged; but the motion was overruled by the court.

Motions in error were then filed by the defendants Hamlin and Davis; and upon those motions the record, with the errors assigned, is brought before this court for revision.

The first question raised by the assignment of errors is, whether the omission of the grand jury to cause the defendant Davis to come before them while the witnesses produced by the State against him were under examination, vitiated the indictment as against him.   It was contended upon the argument in behalf of that defendant that under the rule adopted by the judges of the Supreme Court of Errors in *Lung's case,* 1 Conn., 482, he had the right to be present before the grand jury while the witnesses produced by the State were under examination by that body, and to put to those witnesses any proper questions.   But the rule referred to was intended to confer no such right.   It is directory merely.   Its purpose was to secure uniformity in the proceedings of grand juries

State *v.* Hamlin.

throughout the state so far as it might be done without imposing limitations or restrictions upon the discretionary powers of the court.   Before the adoption of the rule it had been the practice of the court to grant to persons accused of capital crimes, if in custody of the sheriff of the county in which the crimes were committed, the privilege of going before the grand jury while their cases were under investigation and interrogating the witnesses produced by the State against them.   But it always rested in the discretion of the court to grant the privilege or to deny it; and the rule in *Lung's case* was not intended to interfere with the exercise of that discretion.   The grand jury had, therefore, no authority, unless directed by the court, to cause the defendant Davis to come before them.   The plea in abatement contains no allegation that such a direction was given; and in the absence of such an allegation, it must be presumed that no such direction was given.   There was no irregularity therefore in the proceedings of the grand jury by reason of their omission to call the defendant Davis before them, and consequently there is no infirmity in the indictment arising out of that omission.

The second question is, whether the Superior Court erred in sustaining the demurrer to that portion of the defendants' plea in abatement in which they allege that more than one-third of the grand jury, before they were impaneled and sworn, had formed and expressed opinions of the guilt of the defendants, and were unduly biased and prejudiced against them.   The statutes of this state prescribe the qualifications of grand jurors, the manner in which they are to be summoned, and the oath which they are to take on being impaneled.   They must be electors of the county in which the inquest is held; they must be summoned by the sheriff upon an order of the court; and they must be sworn to diligently inquire after and due presentment make of all breaches of the law that shall come to their knowledge according to their charge; the secrets of the cause, their own and their fellows', they will duly observe and keep; they will present no man from envy, hatred or malice; neither will they leave any man

unpresented from love, fear or affection, or in the hope of reward; but will present cases truly as they come to their knowledge, according to their best understanding and according to law. The grand jurors who found the bill of indictment in the case before us possessed the requisite qualifications, were summoned by the sheriff upon an order of the court, and were sworn in the prescribed form. But the statutes contain no provision for challenging grand jurors; and we believe that no grand juror was ever challenged for favor in the courts of this state. Whether individual members of a grand jury may be challenged for favor before they are sworn, is a question which we are not called upon to determine, because no challenge for that or any other cause was made by either of the defendants. The common law requires grand jurors to be good and lawful freeholders and inhabitants ·of the county in which the crimes they are to inquire after were committed. And where that law prevails, there seems to be no doubt that if a disqualified person is returned as a grand juror he may be challenged before indictment found. 3 Bac. Abr., *Juries, A.;* 1 Chitt. Cr. Law, 309. And Mr. Chitty says that if the disqualification is discovered after the finding the defendant may plead it in avoidance and answer over to the felony. 1 Chitt. Cr. Law, 309. But the disqualification must be such as is pronounced by the common law, ·or by the statute, where the statute prescribes the qualifications, and such as absolutely disqualifies; as alienage, nonresidence, or the want of a freehold, where a freehold qualification is required, or that the person returned is not an elector of the county, and which would be a cause of principal challenge as distinguished from challenge to the favor arising from bias, prejudice, interest or the like. *United States* v. *Williams,* 1 Dillon, 492. I have examined, with considerable care, the authorities bearing upon this question, but find it nowhere laid down that the expression of an opinion by a ·grand juror, before he was summoned or returned and sworn, that the defendant was guilty, was ever a ground of challenge ·in the English courts. But in this country there are some ·respectable authorities in favor of allowing it to be a sufficient

ground of challenge; whilst other authorities, equally respect-able, hold the contrary. Nearly all the authorities of the former class, however, hold that the exception must be taken before the juror is sworn, and if taken afterwards it cannot be allowed.

In the case of *The People* v. *Jewett*, 3 Wend., 314, the defendant and one Smith were indicted by the grand jury for a conspiracy to carry off and transport one William Morgan to some place unknown, and in pursuance of such conspiracy, for confining him in a carriage and furnishing means for his abduction. The defendant moved to quash the indictment on the ground that the foreman of the grand jury, with others, had published a pamphlet in which it was stated that the defendant, when called upon as a witness in reference to the abduction, had refused to testify, alleging that he could not do so truly without criminating himself, and concluding with strictures on the conduct of the defendant; and on the further ground that another grand juror, before the finding of the bill of indictment, had, in repeated conversations, declared that the defendant was concerned in the abduction of Morgan, aided in carrying him off, was guilty thereof, and ought to be punished therefor; and that in such conversations the juror discovered great malignity of feeling and bitter hostility against the defendant. The counsel for the defendant thought that those jurors were not competent to find a bill against the defendant. They admitted that a party recog-nized or in jail must challenge the jurors when they came to be sworn; but they claimed that one who has no day in court is put to his plea in avoidance or motion to quash. The court denied the motion to quash, and its action was sustained by the Supreme Court, Savage, C. J., and Marcy, J., giving opinions in the cause. The Chief Justice, after stating that the foreman of the grand jury was not disqualified for the causes set forth in the motion to quash, but that as to the other juror a good cause of challenge existed, observed: "There are causes of challenge to grand jurors, and these may be urged by those accused, whether in prison or out on recog-nizance, and it is even said that a person wholly disinterested

may as *amicus curiœ* suggest that a grand juror is disqualified. But such objection, to be availing, must be made previous to the juror's being impaneled and sworn. It has been urged upon us that the defendant, not having been apprised of any intended proceedings against him, and not having been arrested on a criminal charge or required to enter into a recognizance to appear at the court when the bill of indictment was found, had not an opportunity to make his challenge; that now is his earliest day in court, and that he ought, therefore, to be permitted to avail himself of this defence. Although the force of this appeal is felt, I cannot yield to it and consent that after an indictment found the party charged may urge an objection of this kind in avoidance of the indictment. The books are silent on the subject of such exceptions after indictment found, and in the absence of authority I am inclined to say in consideration of the inconvenience and delay which would unavoidably ensue in the administration of criminal justice was a challenge to a grand juror permitted to be made after he has been sworn and impaneled, that the objection comes too late." Marcy, J., in giving his opinion said: "Though I feel the force of the argument that the defendant should be allowed the benefit of an exception to a partial grand juror, I cannot turn my view from the consideration of the great delays and embarrassments which would attend the administration of criminal justice, if it was to be obtained in the way now proposed. No authority for adopting this course was shown in the argument, and I have not since been able to find any. It would be a novel proceeding, and there is reason to fear it might be followed with more serious difficulties than are now foreseen."

In the case of the *United States* v. *Aaron Burr*, before the Circuit Court of the United States at Richmond, Va., the prisoner was allowed to challenge grand jurors, on the ground that they had formed and expressed opinions of the prisoner's guilt. But the challenges were made before the grand jury were impanneled and sworn. Burr's Trial, reported by David Robertson, p. 38. In *Tucker's case*, 8 Mass., 286, Tucker had been returned as a grand juror. When he was

called in court to be sworn, Mr. Story, as *amicus curiae*, suggested that a certain person had been accused of the crime of murder and that his case would come under the consideration of the grand jury at that term, whether an indictment should or should not be found against him; that Tucker had most probably formed a strong opinion of his guilt; and that it was therefore unsuitable that he should be sworn of the grand jury. Being inquired of by the court if he had known or read of an instance of an objection of this kind to a grand juror being received, Mr. Story replied that he had read in a printed account of the trial of Aaron Burr, of challenges to grand jurors being made by the prisoner for a similar cause, and allowed by the court. The court here recollected the instance referred to, observing that it was a solitary one so far as their knowledge extended. And they said that if objections of this nature were to be received, the course of public justice would be greatly impeded. Those who live in the vicinity are probably better knowing than others to the general character of the parties and of witnesses; and on this account are perhaps the more proper members of the grand jury, who will derive useful information from their knowledge. If, however, any individual juror should be sensible of such a bias upon his mind that he could not give an impartial opinion in any case under the discussion of the grand jury, such juror would feel it his duty or it would be his right to forbear giving an opinion, or perhaps to withdraw himself from the chamber while the discussion continued. Mr. Tucker was sworn. In another case before the same court, it was held that objections to the personal qualifications of a grand juror or to the legality of the returns, cannot affect any indictments found by them after they have been received by the court and filed. *Commonwealth* v. *Smith*, 9 Mass., 107.

In the case of *Musick* v. *The People*, 40 Ill., 268, which was an indictment for larceny, the attorney for the defendant entered a motion to have the grand jury brought to the bar of the court for the purpose of having it purged of members who, it was alleged, had, before hearing the evidence, ex-

pressed the opinion that the accused was guilty of the charge; but the court being engaged, the motion was not taken up until the grand jury came into court for the purpose of making presentments. After they were polled the motion was called up, and, after arguments were heard upon it, the court inquired of the foreman whether the grand jury had acted in the case and was informed that they had and were ready to report a bill. The court thereupon overruled the motion; and upon exception taken, the case went before the Supreme Court. The latter court were inclined to the opinion that under the practice in Illinois, the expression of an opinion by a grand juror that the accused was guilty formed no ground of challenge. But they held that if such an expression of opinion were a ground of challenge, the objection should be taken before the grand juror has been sworn.

In Indiana, a person under prosecution for crime and in custody or on bail, may challenge, for good cause, any person returned or placed on the grand jury. *Hudson* v. *The State* 1 Blackf., 317; *Jones* v. *The State*, 2 id., 475; *The State* v. *Herndon*, 5 id., 75; *Hardin* v. *The State*, 22 Ind., 347; *Mershom* v. *The State*, 51 id., 14. In *Hardin* v. *The State* the court say that "no doubt challenges to the polls may be made where any of the jurors have not the necessary qualifications. These challenges, however, must be made before the jury are sworn and charged."

In Pennsylvania, the defendants in the case of *Commonwealth* v. *Clark*, 2 Browne, 325, being in jail on a charge of homicide, were allowed to challenge grand jurors for favor, before the grand jury were sworn. In New Jersey, the court in the case of the *State* v. *Rockafellow*, 1 Halst., 332, held that it was a good plea in abatement to an indictment for rape that one of the grand jurors by whom the bill was found was not a freeholder as required by the statutes of that state. In another case subsequently tried in the same court, the defendant, who was indicted for embezzling money of a bank, pleaded in abatement to the indictment that two of the grand jurors who found the bill, had, before they were sworn, formed and publicly expressed an opinion unfavorable and prejudicial

to the defendant, by declaring their determination to have him indicted, and that nothing else would have induced them to attend the court at that term. The plea was demurred to and the demurrer was sustained. Ford, J., in giving the opinion of the court affirming the judgment, said: "In regard to the last exception, that being no more than a challenge to the favor is, it comes too late. I have had great difficulty in finding out what the law really is upon this point. It appears never to have made its appearance before this time in a court of justice, though in point of fact the case must have been occurring for centuries; and if there be a case in the books, my misfortune has been not to discover it. In the case of Col. Burr, the challenges to grand jurors were all taken before they were sworn. The case of the *State* v. *Rockafellow*, 1 Halst., 343, was not a challenge to the favor; it was a matter of principal challenge for want of a leading qualification required by the statute; and though I subscribe to the doctrine of the court there delivered and do not see how the court could have done otherwise upon the facts admitted by the demurrer, it may lead to very inconvenient results if carried a single inch beyond the precise circumstances of that very case. If such a plea should be traversed, the court might find great difficulty in permitting those very counsels of the grand jury room to be pumped out of witnesses by the force of their authority, which has been employed in imposing an oath on each grand juror to keep secret. And that, not to elicit evidence of a crime in which the public justice was concerned, but to establish a mere irregularity for the purpose of arresting a public prosecution; and when the defendant was as likely to be guilty as if the irregularity had never happened. But without meaning to disturb that case, my impression is that it has no bearing on the present; and in the absence of all cases, I find no principle on which to maintain the present plea. * * Finally, there is no such plea as this to be found among the records and monuments of the law. It is *sui generis,* not alone without precedents (whereof the books had been filled if past ages had deemed such matters pleadable) but contrary to all precedents, which are the other way." *State* v. *Rickey*, 5 Halst., 83.

State *v.* Hamlin.

The case of *The United States* v. *White*, 5 Cranch C. C., 457, was an indictment for burning the treasury building at Washington. The defendant pleaded in abatement that one of the grand jurors who found the bill had previously expressed the opinion that the defendant was guilty of the crime charged in the indictment. The district attorney objected to the filing of the plea, because the defendant had already pleaded the general issue and because the matter pleaded was no ground for plea. And the objection was sustained by the court. In giving their reasons for thus disposing of the question the court said: "The authorities which have been cited refer to those legal disqualifications which render the juror incompetent in law to act as a grand juror in any case, and not to objections which go only to the favor in some particular case. No exception for favor can be taken to a petit juror after he has been sworn; nor has a case been cited in which an exception to one of the grand jurors for favor has been pleaded. The books cited show that challenges to grand jurors must be taken before they are sworn or before the indictment is found. Exceptions for favor are causes of challenge only and not grounds for a plea."

In *Boyington* v. *The State*, 2 Port. (Ala.), 100, the plaintiff in error was indicted for murder, tried, and found guilty. On his arraignment he pleaded in abatement that his name was Charles R. S. Boynton, on which, issue having been taken, it was adjudged that he answer over. He then filed a special plea averring that one of the grand jurors who preferred the bill of indictment against him was, at the time of the finding, an alien. The court struck out the plea and reserved the point as novel and difficult. The Supreme Court upon that reservation affirmed the ruling of the court below and held, contrary to the decision in *The State* v. *Rockafellow*, *supra*, that after an indictment had been found against a prisoner and the same had been filed and accepted by the court, he could not except to the personal qualifications of the persons selected, summoned and sworn on the grand jury, or plead in bar or avoidance of the indictment that one of the jurors who preferred it was an alien. Upon

the argument of that case it was urged by the attorney for the state, and with great reason, that if exceptions might be taken after indictment found, it would become the policy of the guilty to look and be silent when they saw exceptionable persons about to be impaneled and sworn; that they could not be known to the court by intuition; and guilty persons knowing them would reserve their disclosures until after indictment found in order that they might have other chances of more favorable returns or of taking similar exceptions *ad infinitum.*

The Supreme Court of Ohio, in the case of *The State* v. *Easter,* 30 Ohio St. R., 542, seem to have been of opinion that exceptions to grand jurors for favor, even before they are impaneled and sworn, ought not to be allowed. That was a case in which the defendant, who was indicted for murder in the first degree, pleaded in bar that one of the grand jurors who found the indictment was a nephew of the murdered man and was therefore disqualified. The plea was demurred to, and the demurrer having been sustained by the court, the defendant removed the record to the Supreme Court in order that the question might be there determined. The learned judge who gave the opinion in the case affirming the judgment below, after reviewing the authorities bearing upon the question, and commenting upon the qualifications prescribed by statute for grand jurors and the causes for which they might be challenged, recited the language of the oath taken by them when impaneled, and then observed: "This language seems to indicate that the grand juror may be called upon to act in cases both of enemies and friends. If the first, his oath is that neither malice, hatred, nor ill will shall influence his deliberate and impartial judgment. If the last, no considerations of passion or friendship shall disturb the just discharge of his duties. The grand jury only presents the charge against an accused person; it does not try that charge. This is for the petit jury, and it is well enough that they are subject to the variety of challenges above specified; but as to the grand juror, his qualifications are simply those the statute has prescribed."

: The authorities which have been cited show conclusively that objections to grand jurors on the ground that they have formed and expressed opinions of the guilt of a person accused of crime, before they were impaneled and sworn, cannot be pleaded in abatement to the indictment. There was, therefore, no error in the judgment of the Superior Court that the defendants' pleas, so far as they were based upon that ground, were insufficient. This disposes of the objection of the defendants to Mr. Sumner, the foreman of the grand jury who indicted them. That objection was in the nature of a challenge to the jury for favor, and could not, as has been shown, be pleaded in abatement.

The next error assigned is that the Superior Court overruled that portion of the defendant Davis's plea in abatement in which it is alleged that there were not twelve members of the grand jury in favor of finding a true bill against that defendant; that a number of members desired to take a separate vote upon the question of his guilt, but the foreman ruled, as matter of law, that a true bill could not be found against the defendants Hamlin and Allen, unless a true bill was also found against the defendant Davis, and refused to allow a separate vote to be taken upon the question of finding a true bill against Davis alone, and that the grand jury believing that a true bill ought not to be found against Davis, nevertheless found a true bill against him for the sake of finding a true bill against Hamlin and Allen. This ground of abatement, though demurred to by the State's Attorney, was properly overruled by the court. The State's Attorney had no authority, by demurrer or otherwise, to admit the truth of the allegations contained in that part of the plea, because the law, in furtherance of justice, requires that the proceedings of grand juries should be conducted in secret, and that the secrets of the jury-room should not be revealed. The jurors, as has been shown, are sworn to secrecy—the secrets of the cause, their own and their fellows', they will duly observe and keep. "The secrets of the cause" must relate to the persons accused, the witnesses, who they are and what they testified. Their own and their fellows' secrets

must refer to the deliberations and the votes of the grand jurors themselves. And it was early decided that a grand juror should not be allowed to swear what was given in evidence before them, because he is sworn not to reveal the secrets of his companions. 12 Vin. Abr. *B. a.* 5, 20, *Evidence H.* 4: *State* v. *Fassett,* 16 Conn., 465. It was also decided at an early day that the clerk of a grand jury could not be compelled to testify what took place before that body. 12 Vin. Abr. 38, *Evidence B.*

It was contended upon the argument in the case of *The State* v. *Fassett,* that the witnesses called before the grand jury, as they were not sworn to secrecy, might testify to what took place before that body, although the grand jurors might not. In answer to that claim, Chief Justice WILLIAMS said: " Such a practice would nullify the rule. If it be the object of the law to keep secret the proceedings before the grand jury, it is necessary that the law should impose silence upon those whom it compels to be before them. If it intends they shall be public, then the doors of the grand jury room as well as of the court room should be open to all. If others called there by law may testify to what took place within those walls, it would be idle to close the mouths of the grand jury. * * And we can have no hesitation in saying that the principle which would prevent disclosure by a grand juror must extend to all persons required by law to be present; for such persons are equally interested in the administration of the penal law. 1 Greenl. Ev., § 288. They are not permitted to disclose who agreed to find the bill of indictment, or who did not agree; nor to detail the evidence on which the accusation was founded. *Sykes* v. *Dunbar,* Selw. N. P., 815 [1059]; *Huidekoper* v. *Cotton,* 3 Watts, 56." And in *Regina* v. *Marsh,* 6 Ad. & El., 236, which was an indictment for a misdemeanor, the court refused to receive the affidavit of a grand juror as to the number of grand jurors who concurred in finding the bill. See also *Regina* v. *Russell,* 1 Car. & Marsh., 247; *State* v. *Baker,* 20 Mo., 338.

The allegations in that part of the defendant Davis's plea in abatement, which is now under consideration, could not, if

they are true, be proved, except by the testimony of the grand jurors themselves. The grand jurors could not have been allowed to give testimony in respect to them. And the admission of the State's Attorney could not be received by the court in proof of them. When the plea containing those allegations was filed, the State's Attorney should have objected to its allowance; and the court, upon such objection, would have ruled it out. But as that course was not adopted, the demurrer to the plea cannot be allowed to operate as an admission of the truth of the allegations pleaded, or to have any other operation or effect than an objection or exception to the filing and allowance of the plea.

The next question is whether the indictment charges the defendants with the crime of murder in the first degree according to the requirement of the statute. The General Assembly, by a statute enacted in the year 1846, divided the crime of murder into two degrees—murder in the first degree and murder in the second degree. They declared in that statute that murder which is perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate, and premeditated killing, or which is committed in perpetrating or attempting to perpetrate any arson, rape, robbery or burglary, shall be murder in the first degree, and that all other kinds of murder shall be murder in the second degree; that murder in the first degree shall be punished by death and murder in the second degree by imprisonment in the state prison for life; and that the jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, ascertain in their verdict whether it is murder in the first or second degree.

"It is apparent from this statute," said WAITE, J., · in giving the opinion of the court in the case of *The State* v. *Dowd*, 19 Conn., 387, "that it was not the design of the legislature to create any new offense, or change the law applicable to murder, except so far as the punishment was concerned. The crime still remains as it was at common law; and in the more aggravated cases the person convicted is liable to the original punishment, while others whose crimes are less aggravated are punished with less severity."

State v. Hamlin.

The common law form of indictment which charged the defendant with committing the homicide "feloniously, wilfully, and of his malice aforethought," was therefore sufficient to sustain a verdict of murder in the first as well as the second degree. *State* v. *Verrill*, 54 Maine, 408; *Pike* v. *The State*, 49 N. Hamp., 399; *Green* v. *Commonwealth*, 12 Allen, 155; *Kennedy* v. *The People*, 39 N. York, 245; *Fitzgerald* v. *The People*, 37 id., 413; *Commonwealth* v. *Flannagan*, 7 Watts & Serg., 415; *Fahenstock* v. *The State*, 23 Ind., 231; *Hogan* v. *The State*, 30 Wisc., 437; *State* v. *Lessing*, 16 Minn., 75; *State* v. *Lloyd*, 9 Cal., 54; *Wall* v. *The State*, 18 Tex., 682. But as that form of indictment did not, in terms, charge the crime to have been committed "deliberately and premeditatedly," the defendant could not know, with certainty, whether he was to be tried for murder in the first degree, or only for murder in the second degree. The General Assembly therefore passed another act in 1870, by which they directed that in all indictments for murder the degree of the crime charged shall be alleged. The object of that statute was to give to the defendant information from the indictment itself, whether he is to answer to a charge of willful, deliberate, and premeditated murder, or murder of a lower degree. And the object is accomplished by any allegation which communicates to the defendant, with reasonable certainty, that information. That the addition to an indictment in the common law form of an allegation that the crime therein charged was murder in the first degree, would be sufficient, cannot be doubted. But the counsel for the defendants insist that no other allegation will satisfy the requirement of the statute. We are of opinion, however, that where the indictment charges the crime to have been committed by the defendants feloniously, willfully, deliberately, premeditatedly, and of their malice aforethought, as the present indictment does, it is equivalent to an allegation in an indictment in the common law form, that the crime charged therein is murder in the first degree, and is therefore sufficient.

The only remaining question raised by the assignment of

errors is, whether the two counts in the indictment are properly joined. The defendants Hamlin and Davis claim that they are not, because the first count charges all of the defendants as principals in the crime of murder, and the second charges the defendants Hamlin and Allen as principals and the defendant Davis as an accessory before the fact. This error, like the one last considered, is assigned by Hamlin as well as by Davis, although Hamlin neither demurred to the indictment nor moved in arrest of judgment for its insufficiency; it being claimed by him that the demurrer to the plea in abatement gives him the right to avail himself of any substantial defect in the indictment. This claim, however, is not sustainable. For although it is a general rule that a demurrer to any pleading reaches back to the first defect and requires the court to render judgment against the party who commits in his pleading the first substantial error, it does not apply to pleas in abatement. *Belayse* v. *Hester*, Lutw., 1592; *Rich* v. *Pilkington*, Carth., 171; *Hartop* v. *Hislop*, 1 Salk., 212; *Clifford* v. *Corry*, 1 Mass., 495; *Ellis* v. *Ellis*, 4 R. Isl., 110; *Dean* v. *Boyd*, 9 Dana, 169; *Ryan* v. *May*, 14 Ill., 49; *Crawford* v. *Slade*, 9 Ala., 887; *Knott* v. *Clements*, 13 Ark., 335; Steph. Plead., 144; 1 Chitt. Pl., 465, 669. But being unwilling that either of the defendants should be prejudiced by the inadvertence of counsel, we will consider the question as though it were in all respects regularly and properly presented.

By the common law an accessory could not be put upon his separate trial without his consent, until the conviction of the principal; for by that law the legal guilt of the accessory depends upon the guilt of the principal; and the guilt of the principal can only be established in a prosecution against himself. 3 Greenl. Ev., § 46; 2 Swift Dig., 368. But by statute accessories before the fact may be prosecuted and punished as if they were the principal offenders. The object of this statute was to abolish all distinction between an accessory before the fact and the principal in respect to the grade of the offence and the punishment, and to do away with the provision of the common law which made the conviction of

State *v.* Hamlin.

the principal a condition precedent to the conviction of the accessory. An accessory may, therefore, be indicted either as a principal, that is, he may be charged in the indictment with having actually committed the offence as a principal, or he may be indicted as accessory as for a substantive offence, or he may be joined in the indictment with the principal or principals at the option of the prosecutor. 1 Archb. Cr. Pl. & Ev. (8th Am. Ed. by Pomeroy), 71; *Regina* v. *Hughes*, Bell, 242; *Regina* v. *Manning*, 2 Car. & Kir., 886 in note. But it is contended by the counsel for the defendants that a party cannot be charged as the principal offender in one count and as an accessory in another, because a person cannot at the same time be present as a principal and absent as an accessory before the fact; and if he be so charged, the counts will be repugnant. A claim similar to this was made in the case of *The People* v. *Valencia et al.*, 43 Cal., 552. The defendants were indicted for the murder of one Hewitt. The indictment, like the one in the case before us, contained two counts. The first count charged Pancho Valencia as the principal and Guadalupe Valencia as an accessory. The second count charged Guadalupe as the principal and Pancho as an accessory. The statute provided that accessories might be indicted, tried and punished as principals. The indictment was demurred to, but the demurrer was overruled and the judgment overruling the demurrer was affirmed by the Supreme Court. The defendants contended that the indictment did not conform to the provisions of the statute, because it charged each defendant with two offences, and because the two counts were repugnant. But the court said it was apparent that only one offense was charged, which was the murder of Hewitt; that the principal and the accessory are alike guilty of the same offense, but the rules of pleading required that an accessory should be charged as such and not as a principal; that, had only one of the defendants been indicted, if it were doubtful whether the evidence would show that he was the principal or an accessory, he should be charged in one count as the principal and in another count as an accessory; that there would be neither two offences

State *v.* Hamlin.

charged in the indictment nor would the two counts be inconsistent; and that the same rule would obtain where two or more are charged in the same indictment.    In this state it is not necessary, as it is in California, to state in an indictment against an accessory the acts which show that he aided and abetted the crime, and thus became in law a principal; but it is sufficient to charge him directly as a principal, and proof that he was an accessory before the fact will support the charge.    There is no objection, however, to the joinder of a count charging two or more parties as principals with a count charging one or more of the same parties as principals and the others as accessories before the fact, as the proof required to support the latter count will also be sufficient to support the former.    And the two counts, being for one and the same crime and supported by the same evidence, would not be repugnant, or otherwise opposed to the rules of criminal pleading.    *State* v. *Tuller*, 34 Conn., 280; 1 Bish. Cr. Pro., § 426; 1 Chitt. Cr. Law, 248; Archb. Cr. Pl. & Ev., 59. The objection that the two counts in the indictment are improperly joined, must, therefore, be overruled.    But if two such counts could not be properly joined, the misjoinder could not be taken advantage of by motion in arrest of judgment or on error.    1 Chitt. Cr. Law, 248; Archb. Cr. Pl. & Ev., 59; 1 Bish. Cr. Pro., §§ 424, 426, 447.

Upon the whole, the record discloses no error in the proceedings of the Superior Court, and the judgments against the defendants Hamlin and Davis are affirmed.

In this opinion the other judges concurred.

[NOTE.—Judges SANFORD, BEARDSLEY, and HOVEY of the Superior Court sat in the place of Judges PARK, CARPENTER, and PARDEE, in this and the next following case.]