## PLEA IN ABATEMENT.

Common Pleas Court of Huron County.

### THE STATE OF OHIO v. JAY F. LANING.

Decided, August 17, 1908.

*Criminal Law—Plea in Abatement to Indictment Charging Embezzlement and. Larceny—Objections to Grand Jury—Claim that Indictment was Secured by Prejudice Misconduct and Conspiracy—Sections 5164, 5165, 5168, 5171, 7202, and 7203—Challenges.*

1. It may be plainly implied from the language of Section 5168, Revised Statutes, that the number of persons constituting a legal grand jury is fifteen.
2. Technical objections to the impanneling of a grand jury will not be. considered after presentment of the indictment, or even on challenge to the array; and where the jury wheel has been filled with the proper proportion of names from each ward and township, a panel is not rendered illegal because the names which were drawn from the wheel were largely from one locality.
3. Inquiry by the court or prosecuting attorney as to the qualification of grand jurors is not required, but does not prejudice the rights of the accused, who under a plea in abatement may show disqualification if any exist and thus be relieved from the indictment.
4. It is the duty of the court to call the attention of the grand jury to matters requiring investigation, and if a mistake were made in that respect it would not afford ground for a plea in abatement.
5. Neither absence from the jurisdiction at the time the investigation was made by the grand jury, nor ignorance that an investigation was in progress, afford ground for a plea in abatement. Persons indicted under such circumstances must vindicate themselves before a petit jury.
6. It is impracticable that the qualifications of grand jurors should be inquired into with the same care as in the case of petit jurors, and if it should happen through the infirmities of human nature that a citizen were wrongly indicted by a grand jury whose qualifications have been favorably passed upon by the jury commission and who have taken the required oath, his remedy is not by a plea in abatement, but with a presumption of innocence still attending him he must rely upon a judge and petit jury to establish his innocence.

7. Neither the fact that one of the grand jurors was the husband of the prosecuting witness; nor that other members of the grand jury were active outside of the grand jury in seeking evidence to secure an indictment; nor that members of the grand jury were personal and political enemies and business rivals of the accused; nor that some of the grand jurors had before being sworn expressed hostility to the accused and declared him guilty; nor that unsworn statements and publications were considered by the grand jury, do not constitute grounds for quashing an indictment on a plea in abatement.

*L. W. Wickham* and *S. M. Young,* for plaintiff.

*A. V. Andrews, Horace Andrews, A. M. Beattie, J. J. Sullivan* and *W. M. Koons,* for defendant.

DOYLE, J.

Heard on demurrer to defendant's plea in abatement.

The plea recites at great length that the indictment against the defendant is the result of prejudice, and was accomplished by a combination and conspiracy formed with the design of falsely, maliciously, oppressively and wickedly indicting him upon insufficient competent evidence, and in willful disregard of his rights and without regard to his guilt, by political and private enemies and business rivals. It is charged that the grand jury which indicted him was not selected and impanneled according to law; that some of the jury had, previous to being sworn, expressed hostility to defendant and declared him guilty of the things for which they indicted him; that the grand jury called was lacking in the requisite quota to constitute a grand jury, and that the substitutes for the absentees were selected by the judge, who directed the sheriff to summon them to serve as grand jurors without issuing summons to them, they being called personally by the sheriff to serve without any due process of law.

It is charged further that the grand jury were not impartial, and that the talesmen were not judicious and discreet persons; that no inquiry was made of the jury as to their qualification to sit as grand jurors before being sworn; that the grand jury was not selected from the body of the county, but a majority were from the city of Norwalk where the prejudice was the greatest;

that the persons selected as talesmen, during a recess of the grand jury, attended a secret meeting called to consider the defendant's case, and there met attorneys, other than the prosecuting attorney, for advice, and there considered defendant's case; that unsworn statements of accountants were considered by said grand jury; that the jurors read unfair statements published in the newspapers and designed to injure defendant and bring about said indictment; that the reports from a meeting of interested parties concerning the acts of the defendant, not sworn to by any person, were brought to the attention of the grand jury; that witnesses were taken before the grand jury who did not swear to things they personally knew about, but to matters to which they had been instructed to make oath; that publications of the actions of the Chamber of Commerce of Norwalk, secured by unfair means, were brought to the attention of the grand jury; that one of the grand jurors was the husband of one of the prosecuting witnesses; that defendant was absent form the county when said grand jury was convened and sworn and did not know that he was to be charged before said grand jury with the commission of any offense and had no opportunity to challenge said grand jury or the members thereof.

The first matter to consider is whether there was a legal grand jury. The constitution of this state provides that in cases of this kind "no person shall be held to answer,  *  *  *  unless on presentment or indictment of a grand jury  *  *  *." This, like the 39th Article of the Great Charter requires the accused to be prosecuted according to the laws of the land and by the legal judgment of his peers.

The offense charged against the accused in this case is one for which he can not be put upon trial unless a grand jury has first presented an indictment against him, either from notice taken by themselves of the offense from their own knowledge, observation or information, which is technically termed a presentment, or on a written accusation laid before them at the instance of the state by its representative. By the common law this grand jury consisted of not less than twelve nor more than twenty-three, and a concurrence of twelve was necessary to return an indictment.

This was the number of the grand jury in England and was the common law on the subject at the time of the separation of the Colonies from Great Britain.

Unless altered by statute the rule would be the same in this state. The number required to constitute a grand jury in Ohio has, from the organization of the state, been fifteen. Among the early legislative expressions on this subject, was Section 8 of an act passed February 8th, 1813, "regulating the times of holding the judicial courts." (11 O. L., 89.)

Jury acts were passed in 1824 and 1828. On February 9th, 1831 (29 O. L., 94), "An act relating to juries" was passed, Section 4 of which provides for drawing from the jury box twenty-seven names, the first fifteen of whom should be summoned as grand jurors, and Section 12 of which provided that said fifteen so summoned and sworn should be a grand jury. This Section 4 became Section 5 of 70 O. L., 167, and Section 5167 of Revision of 1880, in so far as providing for the number of grand jurors to be drawn.

The act of September 30th, 1902. (96 O. L., 3), repealed Section 5167 and substituted for it the present Section 5165. This act is known as the jury commission act, and such Section 5165 provides now for drawing such number of persons, "to be summoned to serve as grand or petit jurors," as the court may have ordered.

The omission of the portion of old Section 5167 which provided for the number to be drawn for each of said juries was evidently an oversight or was deemed unnecessary in the light of the common law prevailing in this state on the number which should constitute these juries respectively. However, Section 5168 was left which provides for drawing juries for special terms of common pleas court and provides for "twelve persons to serve as petit jurors, or twenty-seven persons to serve as grand and petit jurors," thus indicating that it is recognized that a grand jury in this state shall consist of fifteen persons.

So, also, Section 7203 was left unchanged, which provides for calling a special grand jury "from the bystanders or neighboring citizens, of fifteen good and lawful men, etc." This again shows

that the Legislature of this state has not changed the number of persons who shall constitute a grand jury.

The fair presumption is that the Legislature omitted directing the number of jurors to be drawn so that the court could draw more than were needed, to provide for absentees and persons excused and yet leave a full jury of persons regularly drawn, and thus obviate the necessity of filling the jury with talesmen or issuing a special venire. However, what is plainly implied in a statute is as much a part of it as that which is expressed (*Doyle* v. *Doyle,* 50 O. S., 330; *Sawyer* v. *State,* 45 O. S., 343), and it being apparent that the Legislature did not mean to make any change in the number of grand jurors, we must hold that fifteen is now the legal number to constitute a grand jury.

Complaint is made that a deficiency of six in the regular grand jury was filled by direction of the judge presiding in that court who named the persons to make up the deficiency and ordered the sheriff to call them, and the same were personally called by the sheriff for that purpose without any special venire being issued.

Section 7202 provides for the court appointing persons to fill vacancies in the grand jury after it has been sworn.

Section 5171 provides for the filling of vacancies in both petit and grand juries by the sheriff summoning talesmen, "or if there be such deficiency in the grand jury, the court may issue a special venire to the sheriff commanding him to summon the persons therein named to attend forthwith as grand jurors." *Julian* v. *State,* 46 O. S., 511.

The substitute jurors were so far as the statute provides chosen in a lawful way.

Objections to the manner of impanneling the grand jury should be made by challenge and not after the presentment of the indictments. Rev. Stat., Sec., 5175; *State* v. *Thomas,* 61 O. S., 444, 461; *Wagner* v. *State,* 42 O. S., 537, 541; *Huling* v. *State,* 17 O. S., 583.

The manner of selecting and drawing juries concerning the public rather than the parties, technical objections will not be considered even on challenge to the array. *State* v. *Barlow,* 70

O: S., 363, where *Huling* v. *State* is considered, approved and the doctrine that such provisions are directory and not mandatory, is reaffirmed.

This would also dispose of the objection made that they were not drawn from the body of the county, although that objection will avail nothing considering that the statutes provide a manner for impanneling a grand jury and it has been followed.

The provision of the statute for drawing jurors from the several wards and townships in proportion to population pertains to the manner of filling the wheel from which the names are to be subsequently drawn. To allow any such selection at the time of drawing would defeat one of the objects of the jury commission law.

The court, therefore, finds that the grand jury was composed of the requisite and proper number of persons and was regularly selected and was a legal grand jury in respect to numbers and manner of impanneling.

Inquiry of the jurors as to their qualifications by the judge or prosecuting attorney is not required by law, and does not prejudice the rights of the accused because if any were not qualified the accused has his rights under this plea in abatement to show disqualification of jurors and be relieved of the indictment. *Sage* v. *State,* 127 Ind., 15; 26 N. E., 667.

An examination of the charge of the court does not show that its powers were exceeded. The court has the right and it is its duty to call the attention of the grand jury to any matters it may seem necessary for the grand jury to investigate, and even though wrong, it would not be ground for a plea in abatement. *Stahl* v. *State,* 5 C. D., 29.

The question of prejudice and misconduct of jurors remains for consideration. The accused claims he was out of the state when the jury was impanneled and sworn, and could not be present to challenge the jurors. He was in no worse situation than one who was within the county and had no expectation that the grand jury would, during its deliberations, consider charges on its own presentment against him. About the only persons who can avail themselves of challenges to a grand jury

are those who have been bound over or anticipate a presentment. There is no practical way of taking care of others, and they must therefore vindicate themselves through the petit jury.

The qualifications of jurors as provided in Section 5164, are that they shall be judicious and discreet men, having the qualifications of electors of the county where drawn. It is further provided that no one shall be selected, who shall not in the judgment of all the commissioners be competent in every respect to serve as a juror. This imposes upon the commissioners, who are to select the names of persons to be put into the jury wheel from which juries are to be drawn, the duty of choosing persons capable of acting with judgment and who are prudent and sensible men. The determination of these qualities is placed upon the commission. While a failure to select men of that character might be considered upon challenge, the court can not go back of the determination of the commission on a plea in abatement to an indictment returned by a grand jury, and pass upon the correctness of the judgment of the commission as to the qualifications in that particular of the jurors composing that grand jury. It is presumed that the commissioners have done their duty in respect to matters left to their judgment in determining the personal fitness and capability of the jurors.

"It would hardly be contended that it would be a good plea in avoidance of an indictment, that one or more of the grand jurors were not men of fair character, or sound judgment or well informed."

The statute does not say that none but judicious and discreet men shall be put on the jury, but enjoins it as a duty upon the jury commission to put only that kind of men on the jury list.

There is a definite distinction between a direction to a ministerial officer and a condition precedent to the competency of a person to serve as a juror. *State* v. *Elson*, 45 O. S., 648; *State* v. *Cox*, 52 Vt., 471; *People* v. *Jewett*, 6 Wend., 386.

Thus in *Doyle* v. *State*, 17 Ohio, 222, it was held that where a grand juror was not an elector, that the demurrer of the state to the special plea, showing that fact, should be overruled and the

indictment quashed. Lack of statutory qualifications on the part of a juror would be good ground for quashing an indictment on a plea in abatement. *Huling* v. *State,* 17 O. S., 583.

If a single juror were thus disqualified, he can not be counted as a juror, and the grand jury would then not have the number of members required by law, and would not be a grand jury and could return no indictment. It requires twelve to find a true bill, and for aught the court could know the disqualified person might make one of the twelve to find a bill of indictment.

This rule obtains in many other states and in the federal courts though regarded by some authorities as an exception to the general rule.

As a matter of interest it might be suggested that the incapacity of a person not an elector might be traced to the old rule that one could not be prosecuted except "by the legal judgment of his peers." The requirement that a juror must be an elector, however, is a condition precedent to his competency, and exception to an indictment can be taken by plea in abatement, when such disqualification exists.

Our Supreme Court has ruled in a number of cases that other objections to grand jurors must be raised by challenge and can not be raised on a plea in abatement, even though the accused may have had no notice that charges against him were to be investigated by the grand jury and had no opportunity to challenge jurors before they were impanneled.

In *State* v. *Easter*, 30 O. S., 542, it was held that the fact that one of the grand jurors was the nephew of the person murdered and for whose murder the accused was indicted, was not good ground for a plea in abatement.

In *Koch* v. *State*, 32 O. S., 353, it was held, in a prosecution for violating the liquor laws, that the fact that one of the jurors had declared that "they would find enough bills to break every liquor seller" in that county, was not good ground for a plea in abatement. It was further held in that case that the fact that two of the jurors had subscribed funds to assist in prosecution of violators of the Ohio liquor law, did not disqualify them as grand jurors. Misconduct on the part of a juror was held

not good ground for a plea to the indictment. *Turk* v. *State*, 7 Ohio., 240.

That a grand jury was impanneled for a malicious purpose was held not ground for plea in abatement. *Gibbs* v. *State*, 45 N. J. Law, 379.

Where a member of the grand jury "actively assisted in finding a true bill" and was a son of the injured party, it was held no ground for quashing the indictment. *State* v. *Sharp*, 110 N. C., 604; 14 S. E., 504.

Active investigations by a grand juror and belief in guilt before impanneling held not ground for plea in abatement. *Commonwealth* v. *Woodward*, 157 Mass., 516; 34 Am. St. Rep., 302; 32 N. E., 939, 940.

Jurors forming and expressing opinions of guilt of accused before impanneling, was held not a good ground for plea in abatement. *State* v. *Hamlin*, 47 Conn., 95, 113, 114; 36 Am. Rep., 54; *Musick* v. *People*, 40 Ill., 268.

In *State* v. *Dayton*, 3 Zab., 49 (23 N. J. L., 49), the court expresses its opinion of the law on this subject as follows:

"That an indictment was found by the grand jury upon illegal evidence, or without legal evidence, can not be taken advantage of by the defendant." "Where the facts charged in the indictment clearly constitute no crime; where the court in which the indictment is found have no jurisdiction of the offense; where it appears in the face of the indictment that the prosecution is barred by lapse of time; or, where for any cause, it is manifest that no judgment can be rendered on the indictment, there is obvious propriety in not putting the defendant to the expense and vexation of a trial. But when the exception is purely technical, in no wise affecting the merits of the controversy, there would seem to be no good reason why the court should exercise its discretionary power in aid of the defendant."

The objection that one of the grand jurors was the husband of a prosecuting witness is met by the case of *State* v. *Easter*, 30 O. S., 542; *State* v. *Sharp*, 110 N. C., 604; and other cases where jurors were active in bringing about prosecutions and had formed and expressed opinions.

· The grand jury from its origin has been a commission to inquire into charges preferred against the subject. It was as well a protection for the subject against unjust and vexatious prosecutions as the originator of presentments. That part of the Bill of Rights quoted above (Art. I. Sec. 10, Constitution of Ohio), is a continuation of that ancient protection to the accused. It was not created to prosecute, but to inquire. If an indictment were preferred by the crown it was its duty to investigate and determine whether that indictment should be presented and the accused prosecuted. Its province was to examine the evidence offered and determine whether there were sufficient to put the accused on trial, or whether any crime had been charged. It was not a trier of the guilt or innocence of the accused. Blackstone, Vol. 4, page 303, says: ''They are only to hear evidence on behalf of the prosecution; for the finding of an indictment is only in the nature of an inquiry or accusation, which is afterward to be tried and determined; and the grand jury are only to inquire upon their oaths, whether there be sufficient cause to call upon the party to answer it.''

That the character of the duty of the grand jury has not in the main changed is shown in the oath required by Sec. 7191, which defined its main function. They are required to ''diligently inquire and true presentment make, of all such matters and things as shall be given to 'them' in charge, or otherwise come to 'their' knowledge.''

The scope of the grand jury's investigation is not only to consider the cases of those persons bound over by magistrates, but to take in charge matters presented by the court or the prosecuting attorney, and other matters disclosed and brought to light in the jury room during the investigations. It may investigate matters of which fellow jurors are witnesses, or to which jurors may call attention. All these things come within the purview of the oath prescribed by statute to be administered to the grand jury.

The work thus laid out for the grand jury precludes all notion that their qualifications should be as nicely inquired into as those of petit jurors. It would be impractical in the very nature of that branch of criminal investigation.

Their qualifications are first passed upon, and unworthy ones sifted out by the jury commission who are required to provide for juries only judicious and discreet persons.   When impanneled as grand jurors they are required to take an oath (Sec. 7191), to ''present no person through malice, hatred or ill will, nor * * * leave any person unpresented through fear, favor or affection, or for any reward or hope thereof,'' and in all present-ments to ''present the truth, the whole truth and nothing but the truth, according to the best of 'their' skill and understand-ing.''

After this preparation for the protection of the citizen from unjust and unwarranted prosecutions, if through the infirmities of human nature or poor judgment, it proves unavailing, he then is provided with a judge and jury to try the question of his guilt or innocence, with the presumption of innocence attending him throughout the trial and his rights guarded by all the technicali-ties which the ingenuity of lawyers learned in the legal rights of men, could invent for the reasonable protection of the accused against unjust conviction.   He has by this machinery of the criminal law for protection against prosecutions for felonies and infamous crimes far more protection than in case of minor of-fenses or in cases of impeachment or cases arising in the army and navy, or in the militia when in actual service.   In the latter cases he may have under the Constitution, no protection against arrest and prosecution at the instance of the most malicious and malignant enemy, and may be thrown entirely on his civil rights for redress for malicious prosecution.

If all the nice technicalities of proceedings with a petit jury were applicable to the proceedings before a grand jury the result would be a double trial.   The substantial rights of the accused having been guarded by the state, the court can not make in-quiry into the irregularities of the grand jury on a plea in abate-ment.   If grand jurors violate their oaths and willfully fail to do their part in the administration of justice, the court should be provided with some way of protecting itself.   The state is as much injured as the accused.   It is as much the interest of the court and the community to be relieved of the burden of unwar-

ranted prosecutions as for the accused to escape them, but in the present state of our law a person accused can not take advantage of it to stay further proceedings after indictment returned.

As pointed out in *State* v. *Easter*, 30 O. S., 542, 548, the exception to the indictment for reasons which would, before the jury was sworn, have constituted a challenge for favor, by plea in abatement is the most expensive and inconvenient form in which the matter can be presented, and against the policy of the law which requires matters of that kind to be disposed of in the summary manner of disposing of challenges. This summary proceeding can not be had on plea in abatement if facts are in dispute which should be tried by a jury. "It may be used as an engine of delay," so as to defeat the ends of justice.

The court, on the weight of authority on the subject, can not find that the grounds alleged in the plea in abatement are sufficient to warrant the quashing of the indictment, presented by the grand jury, and the demurrer of the state thereto is sustained.