STATE OF CONNECTICUT *v.* BERNARD AVCOLLIE
(10089)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued October 7—decision released December 14, 1982

*John D. Jessep,* with whom, on the brief, was *Theodore I. Koskoff,* for the appellant (defendant).

*Francis M. McDonald, Jr.,* state's attorney, with whom were *Paul E. Murray* and *Catherine J. Capuano,* assistant state's attorneys, for the appellee (state).

Speziale, C. J. The defendant, Bernard Avcollie, was indicted on November 21, 1975, for the murder of his wife. After a jury trial, the jury returned a verdict of guilty which, at the defendant's request, was immediately set aside by the trial judge, who rendered a judgment of acquittal. The state, with permission of the trial court pursuant to General Statutes § 54-96, appealed the judgment to this court. After a review of the record, we concluded that it supported the jury's verdict. We therefore found error, set aside the judgment of the trial court, reinstated the jury verdict, and remanded the case with direction to render judgment that the defendant was guilty and to impose sentence. *State*

v. *Avcollie,* 178 Conn. 450, 471, 423 A.2d 118 (1979).[1]
The defendant's petition for certiorari addressed to
the United States Supreme Court was denied, 444
U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980),
and judgment of guilty and imposition of sentence
followed.

The defendant now appeals from that judgment,
challenging (1) the sufficiency of the evidence; (2)
the grand jury procedure and selection; (3) the
court's charge to the jury on the issues of (a) the
defendant's testimony; (b) sanity; and (c) intent;
(4) the giving of a supplemental "Chip Smith"
charge; and (5) the court's refusal to hear juror
testimony regarding the verdict.

## I

### SUFFICIENCY OF THE EVIDENCE

The defendant claims that the evidence was
insufficient as a matter of law to support the jury's
verdict.   This court has already held otherwise.
*State* v. *Avcollie,* 178 Conn. 450, 423 A.2d 118 (1979).
In a belated reargument,[2] the defendant claims sev-
eral factual inaccuracies in our earlier opinion. We
remain convinced that our decision correctly held
that there was sufficient evidence to permit the jury
to find the defendant guilty beyond a reasonable
doubt.

[1] A detailed statement of facts is unnecessary to our determination
of this appeal, but may be found in our prior opinions in this case,
*State* v. *Avcollie,* 178 Conn. 450, 423 A.2d 118 (1979), cert. denied,
444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980), and *State*
v. *Avcollie,* 174 Conn. 100, 384 A.2d 315 (1977). Facts relating to
specific claims will be included in our discussion thereof.

[2] The proper procedure to correct errors in an opinion of this
court is to file a motion to reargue within ten days of the date when
the decision is announced. Practice Book § 3111A. The defendant
did not avail himself of this procedure at the appropriate time.

## II

### THE GRAND JURY

Wanda Avcollie, the defendant's wife, was found floating in the family swimming pool at approximately 2 a.m. on October 30, 1975. At about 2:47 a.m. she was pronounced dead by the medical examiner of Waterbury. On November 21, 1975, a grand jury returned a true bill accusing the defendant of murdering Wanda Avcollie, in violation of General Statutes § 53a-54a.

The Avcollie grand jury was unusual in two ways. First, no attorney was included on the panel. Second, on motion of the state's attorney, the defendant was neither informed of the proceedings nor allowed to be present during the taking of evidence. The defendant claims that a grand jury so conducted violates article first, § 8 of the Connecticut constitution,[3] and denies an accused due process. We find no merit in this claim.

When the grand jury in this case was sitting, grand jury procedure was almost entirely governed by the common law.[4]  "The state's attorney lays

---

[3] "[Conn. Const., art. I § 8] (RIGHTS OF ACCUSED IN CRIMINAL PROSECUTIONS. . . .  PRESENTMENT OF GRAND JURY, WHEN NECESSARY).

Sec. 8.  ". . . No person shall be held to answer for any crime, punishable by death or life imprisonment, unless on a presentment or an indictment of a grand jury. . . ."

[4] Grand jury procedure was first extensively codified in the 1976 amendments to the Practice Book, 1963, as §§ 2012–22. These amendments were adopted June 7, 1976, to take effect October 1, 1976. The current rules are essentially the same and may be found at Practice Book, 1978, §§ 604–14.

The only provisions of the Practice Book relating to grand juries in 1975 were § 477D ("the proceedings before . . . [the] grand jury shall be secret and no attorney for the state or for an accused shall be present . . . .") and § 477E (challenge to the array).

before the court a bill of indictment for murder . . . ;
the court orders a grand jury to be summoned to
consider it; the state's attorney submits a list of
witnesses, but neither he nor any counsel for the
accused is in the grand jury room . . . . The grand
jury proceedings . . . are conducted in secret.
*State* v. *Coffee,* 56 Conn. 399, 410, 16 A. 151 [1888].
While the accused is not, as a matter of right, enti-
tled to be present within the grand jury room, in
practice . . . he is allowed the privilege of being
present in the grand jury room during the taking
of evidence by the grand jury although not during
their deliberations. *State* v. *Fasset,* 16 Conn. 457,
469 [1844]." *State* v. *Menillo,* 159 Conn. 264, 273–74,
268 A.2d 667 (1970).

## A

### ABSENCE OF AN ATTORNEY FROM THE PANEL

Although it is the usual practice in this state to
include an attorney on the grand jury panel; *State*
v. *Menillo,* supra, 274 n.1; nothing in our case law
or the present statutes *requires* it. The defendant
does not claim otherwise, but submits that improper,
inadmissible evidence may have been heard by the
grand jury because no attorney was present, and
that he was prejudiced thereby.

This claim seems to assume that the grand jury
functions like a trial before a petit jury, where evi-
dentiary rules are required. The defendant mis-
conceives the purpose of the grand jury. "It is, of
course, desirable to elicit evidence which would be
admissible in a trial court. No claim is made, how-
ever, that evidence of that sort was not elicited in
this case. The complaint is only that some undis-
closed quantum of inadmissible evidence was also
heard. The grand jury, here and in England, has,
for hundreds of years, convened as a body of lay-

men, free from technical rules and acting in secret. Their proceedings 'are both "ex parte" and interlocutory; moreover, the grand jury only seeks for a "probable cause"; hence, on all principles, the jury-trial rules of Evidence should not apply. Moreover, in point of policy, no rules should hamper their inquiries, nor need a presentment amounting only to probable cause be based on a system of rigid sifting of evidence.' 1 Wigmore, Evidence (3d Ed.) § 4, p. 21." *State* v. *Stallings,* 154 Conn. 272, 280, 224 A.2d 718 (1966); see also *State* v. *Stepney,* 181 Conn. 268, 272, 435 A.2d 701 (1980), cert. denied, 449 U.S. 1077, 101 S. Ct. 856, 66 L. Ed. 2d 799 (1981); *State* v. *Fasset,* 16 Conn. 457, 472–73 (1844). Because grand juries are permitted to return a true bill based on inadmissible evidence, the absence of an attorney on the *Avcollie* panel is irrelevant to the validity of the indictment.

### B

#### EXCLUSION OF THE DEFENDANT FROM THE PROCEEDINGS

When the grand jury was summoned, the state requested that the defendant not be allowed to attend the proceedings because he was an experienced criminal defense attorney. The court granted the request, and the defendant was given no notice of the investigation until the indictment was returned. The defendant contends that he had a right to attend the taking of evidence, and that the denial of this alleged right invalidates the indictment. We disagree.

There is no doubt that from the earliest times an accused has generally been allowed to attend the grand jury proceedings and to cross-examine witnesses. See, e.g., *State* v. *Menillo,* supra, 274–75; *State* v. *Wolcott,* 21 Conn. 272, 279 (1851); *Lung's*

*case,* 1 Conn. 428 (1815). Although in *State* v. *Stallings,* supra, 282, we mistakenly referred to this practice as a "right," the correct rule is stated in *State* v. *Hamlin,* 47 Conn. 95, 104–105 (1879) : "It was contended upon the argument in behalf of that defendant that under the rule adopted by the judges of the Supreme Court of Errors in *Lung's case,* 1 Conn. [428], he had the right to be present before the grand jury while the witnesses produced by the State were under examination by that body, and to put to those witnesses any proper questions. But the rule referred to was intended to confer no such right. It is *directory* merely. Its purpose was to secure uniformity in the proceedings of grand juries throughout the state so far as it might be done without imposing limitations or restrictions upon the discretionary powers of the court. Before the adoption of the rule it had been the practice of the court to grant to persons accused of capital crimes, if in custody of the sheriff of the county in which the crimes were committed, the privilege of going before the grand jury while their cases were under investigation and interrogating the witnesses produced by the State against them. But it always rested in the discretion of the court to grant the privilege or to deny it; and the rule in *Lung's case* was not intended to interfere with the exercise of that discretion. The grand jury had, therefore, no authority, unless directed by the court, to cause the defendant Davis to come before them." (Emphasis added.)

More recently, in *State* v. *Menillo,* supra, we clearly indicated that the practice of allowing the defendant to attend the grand jury proceedings was grounded upon sound judicial discretion which could be exercised to exclude the defendant for good

cause. We there stated "where [the accused] is in custody within this state or his whereabouts are either known to the state or readily ascertainable, we think that, *in the absence of good cause or reason to the contrary,* he *should* be given the usual opportunity, although of course he cannot be compelled, to be present in the grand jury room during the examination of the state's witnesses against him." (Emphasis added.) *State* v. *Menillo,* supra, 278. In *Menillo* the defendant was excluded because of threats made to witnesses who were expected to testify before the grand jury. "This did not invalidate the grand jury proceedings, although it was a departure from the usual Connecticut practice." Id.[5]

We find that the trial court abused its discretion in excluding the defendant from the grand jury proceedings merely because he is an attorney. The defendant, however, has failed to show that he was harmed by this abuse of discretion. Therefore, although the court's action was wrong, it does not constitute reversible error.

## C

### QUASHING OF SUBPOENAS TO THE GRAND JURORS

On May 12, 1976, the defendant filed a motion to dismiss the indictment. The defendant claimed, inter alia, that the grand jury was "selected in an

---

[5] The judges of the Superior Court in effect confirmed that the practice in Connecticut was to allow the defendant to attend the taking of evidence *subject to the discretion of the judge* when they promulgated § 2017 of the Practice Book, 1963 (adopted June 7, 1976, to take effect Oct. 1, 1976). This section reads in part: "The following persons may be present while the grand jury is taking evidence . . . (4) The defendant, within the discretion of the judicial authority." This section, as amended, is now § 609 of the 1978 Practice Book. See generally, *State* v. *Canady,* 187 Conn. 281, 445 A.2d 895 (1982).

unconstitutional manner," denying the defendant due process and equal protection under the law. The motion stated no factual basis for the claim. At a hearing on the motion, defense counsel questioned the sheriff of New Haven County at length about the method used to select the grand jury panel. The defense also subpoenaed each of the grand jurors from the panel to testify. The state moved to quash the subpoenas. In opposition to the motion to quash, defense counsel asserted a need to question the grand jurors about their background, race, and qualifications. He stated that he hoped to discover thereby whether this grand jury was a representative cross-section of the community, whether it was a blue-ribbon grand jury, and whether there had been intentional discrimination against some class of persons, possibly professional people or attorneys. The court granted the motion to quash the subpoenas.

"There is no constitutional requirement that members of the grand jury be selected in any particular manner. The constitutional guarantee merely forbids any intentional discrimination against race or class. *Brown* v. *Allen,* 344 U.S. 443, 73 S. Ct. 397, 97 L. Ed. 469 [1953]; *Akins* v. *Texas,* 325 U.S. 398, 65 S. Ct. 1276, 89 L. Ed. 1692 [1945]." *State* v. *Cobbs,* 164 Conn. 402, 409, 324 A.2d 234, cert. denied, 414 U.S. 861, 94 S. Ct. 77, 38 L. Ed. 2d 112 (1973). To prevail on a claim of grand jury discrimination, the challenger must demonstrate that there was an intentional and systematic exclusion of a constitutionally cognizable group. *Rose* v. *Mitchell,* 443 U.S. 545, 565, 99 S. Ct. 2993, 61 L. Ed. 2d 739 (1979); *Castaneda* v. *Partida,* 430 U.S. 482, 494, 97 S. Ct. 1272, 51 L. Ed. 2d 498 (1977); see generally *State* v. *Villafane,* 164 Conn. 637, 644–51, 325 A.2d 251

(1973). Random selection is not required; *State* v. *Villafane,* supra, 644; *State* v. *Cobbs,* supra; nor does every identifiable class or race need to be represented. *State* v. *Cobbs,* supra, 409.

Counsel for the defendant made no attempt to lay a foundation for the general allegations in the defendant's motion to dismiss. When questioned by the court, he admitted he could be accused of being on a fishing expedition and was unable to say what class was being discriminated against. Defense counsel also indicated that he did not intend to limit his inquiry to discrimination, but rather hoped to pursue a general investigation into the selection of grand jurors. Although an investigator was retained by the defense, he was never called to testify. Nor was the sheriff questioned about systematic exclusion of jurors. The defense presented neither evidence nor affidavits which indicated that the defendant had a viable claim.

A defendant has a right to challenge an improperly selected grand jury. "More than a bare assertion that the system used was discriminatory, however, is required to overcome the presumption that the grand jury was selected in a proper manner." *State* v. *Cobbs,* supra, 408–409; *State* v. *Davis,* 158 Conn. 341, 345, 260 A.2d 587, remanded for resentencing, 408 U.S. 935, 92 S. Ct. 2856, 33 L. Ed. 2d 750 (1969). In addition, before a court will permit a full-scale interrogation of the jury panel, a defendant must show, by some independent evidence, that there are reasonable grounds to suspect that the panel is improperly constituted.

"This does not, of course, require that the challenge *show* that the panel is improperly constituted; but what it *does* require is that the challenger

assert *facts* that tend to raise a doubt as to whether the panel *may* be improperly constituted. Then follows the inquiry to see if such suspicion, duly alleged, is supported by proof.

"To require a full-scale investigation of the grand jury panel solely upon a mere assertion, not supported by so much as an affidavit . . . that the panel was improperly drawn, would be to open *every* grand jury panel, no matter how perfectly impartial and representative, to a full-scale investigation—or perhaps more accurately, to a fishing expedition of broad range. Such a course would consume enormous amounts of time and energy of our already overburdened trial courts, with concomitant delays in their calendars, and would be especially injurious to the prompt disposition of justice." (Emphasis in original.) *Rojas* v. *State,* 288 So. 2d 234, 237 (Fla. 1973).

The trial court correctly granted the state's motion to quash the subpoenas.

### III

#### Charge to the Jury

#### A

##### the defendant's testimony

The defendant next claims that the trial court erred in its charge to the jury by instructing them that they should consider the defendant's interest in the outcome of the case when weighing his credibility as a witness.[6] The defendant's constitutional

---

[6] The charge was as follows: "An accused person is not obliged to take the witness stand in his own behalf. On the other hand, he has a perfect right to do so. In weighing the testimony that he has given you, you should apply the same principles by which the testimony of other witnesses are tested, and that necessarily involves a

claim is that the charge denies him due process of law. Although the defendant failed to take an exception to this part of the charge, and raises this claim for the first time on appeal, we have previously considered a challenge to similar instructions under the bypass rule of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), and will address the claim here. See *State* v. *Maselli,* 182 Conn. 66, 74, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981); *State* v. *Mastropetre,* 175 Conn. 512, 524, 400 A.2d 276 (1978).[7]

This claim is totally without merit. We have without exception rejected challenges to language substantially the same as that challenged here in a line of cases starting as early as 1893. *State* v. *Maselli,* supra; *State* v. *Mastropetre,* supra; *State* v. *Bennett,* 172 Conn. 324, 374 A.2d 247 (1977); *State* v. *Jonas,* 169 Conn. 566, 363 A.2d 1378 (1975), cert. denied, 424 U.S. 923, 96 S. Ct. 1132, 47 L. Ed. 2d 331 (1976); *State* v. *Blyden,* 165 Conn. 522, 528, 338 A.2d 484 (1973); *State* v. *Moynahan,* 164 Conn. 560, 574, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973); *State* v. *Guthridge,* 164 Conn. 145, 151, 318 A.2d 87 (1972), cert. denied, 410 U.S. 988, 93 S. Ct. 1519, 36 L. Ed.

consideration of his interest in the case. You will consider the importance to him of the outcome of this trial. An accused person having taken the witness stand, stands before you just like any other witness and is entitled to the same consideration and must have his testimony measured in the same way as any other witness, including, of course, his interest in the verdict which you are to render."

[7] We find inapposite language to the contrary in *State* v. *Kish,* 186 Conn. 757, 769–70, 443 A.2d 1274 (1982), *State* v. *Miller,* 186 Conn. 654, 668–69, 443 A.2d 906 (1982), and *State* v. *Kurvin,* 186 Conn. 555, 570, 442 A.2d 1327 (1982), and reaffirm and adhere to our holding as previously set forth in *State* v. *Maselli,* 182 Conn. 66, 74, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981); *State* v. *Mastropetre,* 175 Conn. 512, 523–25, 400 A.2d 276 (1978).

2d 186 (1973) ; *State* v. *Palko,* 122 Conn. 529, 534, 191' A. 320, aff'd, 302 U.S. 319, 58 S. Ct. 149, 82 L. Ed. 288 (1937) ; *State* v. *Schleifer,* 102 Conn. 708, 725, 130 A. 184 (1925) ; *State* v. *Saxon,* 87 Conn. 5, 22, 86 A. 590 (1913) ; *State* v. *Fiske,* 63 Conn. 388, 392, 28 A. 572 (1893).

# B

### SANITY CHARGE

The defendant also objects to the charge on the issue of sanity, claiming that it raised an impermissible presumption as to an element of the crime. The defendant concedes that he did not raise the issue of sanity at trial, and also acknowledged in his motion for acquittal of January 28, 1980, that "[t]he issue of insanity was never raised by the defense or by the evidence."

Further, the defendant filed no request to charge on the issue of sanity and took no exception at trial. We therefore refuse to consider this claim, raised for the first time on appeal. *State* v. *Kurvin,* 186 Conn. 555, 563–64, 442 A.2d 1327 (1982) ; *State* v. *Holmquist,* 173 Conn. 140, 151, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977) ; *State* v. *Green,* 172 Conn. 22, 28–29, 372 A.2d 133 (1976).

# C

### CHARGE ON INTENT

The defendant's final objection to the jury charge is that the charge on intent violates the rule of *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979). Although no exception was taken to the charge, this court has previously con-

sidered *Sandstrom* claims under the bypass rule of *State* v. *Evans,* supra, when the issue of intent was central to the case. See *State* v. *Cosgrove,* 186 Conn. 476, 442 A.2d 1320 (1982); *State* v. *Truppi,* 182 Conn. 449, 438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981).

The intent instruction used by the court here is essentially the same as that approved in *State* v. *Maselli,* supra, 75n, 77n. The total charge is indistinguishable from numerous charges which we have repeatedly approved following the *Sandstrom* decision; see *State* v. *Miller,* 186 Conn. 654, 667–68, 443 A.2d 906 (1982); *State* v. *Mason,* 186 Conn. 574, 582–84, 442 A.2d 1335 (1982); *State* v. *Cosgrove,* 186 Conn. 476, 480–84, 442 A.2d 1320 (1982); *State* v. *Pina,* 186 Conn. 261, 264, 440 A.2d 967 (1982); *State* v. *Stankowski,* 184 Conn. 121, 148–52, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); *State* v. *Brokaw,* 183 Conn. 29, 33–34, 438 A.2d 815 (1981); *State* v. *Truppi,* supra, 453; *State* v. *Nemeth,* 182 Conn. 403, 411, 438 A.2d 120 (1980); *State* v. *Vasquez,* 182 Conn. 242, 253, 438 A.2d 424 (1980); *State* v. *Maselli,* supra, 75–76; *State* v. *Perez,* 181 Conn. 299, 311–16, 435 A.2d 334 (1980); *State* v. *Arroyo,* 180 Conn. 171, 173–81, 429 A.2d 457 (1980); *State* v. *Harrison,* 178 Conn. 689, 692–99, 425 A.2d 111 (1979); and does not include the conclusive presumption language consistently condemned by this court. *Turcio* v. *Manson,* 186 Conn. 1, 6, 439 A.2d 437 (1982); *State* v. *Johnson,* 185 Conn. 163, 176, 440 A.2d 858 (1981), aff'd, 460 U.S. 73, 103 S. Ct. 969, 74 L. Ed. 2d 823

(1983). Our review of the charge as a whole convinces us that the charge here was not likely to mislead the jury.[8]

## IV

### CHIP SMITH CHARGE

During their deliberations, the jury sent a note to the court stating that they were deadlocked eleven to one for conviction and requesting guidance. The court then gave a modified version of the "Chip Smith" charge.[9] See *State* v. *Smith,* 49 Conn. 376 (1881).

---

[8] The defendant asserts that the instruction used here is identical to that given in *State* v. *Moye,* 177 Conn. 487, 493, 418 A.2d 870, vacated, 444 U.S. 893, 100 S. Ct. 199, 62 L. Ed. 2d 129, on remand, 179 Conn. 761, 409 A.2d 149 (1979), where we ultimately ordered a new trial. He claims, therefore, that we must find error. This claim is without merit for the reasons stated in *State* v. *Cosgrove,* 186 Conn. 476, 482 n.3, 442 A.2d 1320 (1982).

[9] The court charged as follows:

"Previously in my charge I said this to you: To support a verdict it must be a unanimous one. But that did not mean that each juror should pursue his own deliberations and judgment with no regard to the arguments and conclusions of his fellows. Or that having reached a conclusion he should obstinately adhere to it without a conscious effort to test its validity by other views entertained by other jurors equally wise and justly resolved to do their duty.

"To put it another way succinctly: Although the verdict to which a juror agrees must, of course, be his own conclusion and not a mere acquiescence in the conclusion of his fellows, yet in order to bring twelve minds to a unanimous result, the jurors should examine with candor the questions submitted to them and with due regard and deference to the opinions of each other. In conferring together the jury ought to pay proper respect to each other's opinions. The jurors ought not to doubt the conclusions of a judgment which is not concurred in by most of those with whom you are associated, and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of your fellows.

"I am going to ask you to go back to the jury room and discuss this case further.

"If you reach an impasse you can so notify the Court·with the simple statement that you cannot agree or that you have reached an impasse.

"You may now go back."

The "Chip Smith" charge has been so consistently upheld by this court that the defendant does not challenge it directly. See *State* v. *Stankowski,* 184 Conn. 121, 145–46, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981), and cases cited therein. Rather, the defendant claims that when the court knows that the jury are deadlocked eleven to one for conviction, and the jury know that the judge knows the division, the "Chip Smith" charge is tantamount to a directed verdict of guilty. This overlooks the fact that the "Chip Smith" charge, while encouraging a continued search for unanimity, also stresses that each juror's vote must be "his [or her] own conclusion and not a mere acquiescence in the conclusions of his [or her] fellows . . . ." The language of the charge does not direct a verdict, but encourages it. We agree with the Second Circuit Court of Appeals which held, in a situation directly parallel to this one: "The fact that the judge knew that there was a lone dissenter does not make the charge coercive inasmuch as the nature of the deadlock was disclosed to the Court voluntarily and without solicitation. See *Bowen* v. *United States,* 153 F.2d 747 (8th Cir. 1946). To hold otherwise would unnecessarily prohibit the use of the Allen charge[10] in circumstances where the judge was made aware of the numerical division of the jurors, for example, by an over-zealous juror, although he had not made the forbidden inquiry himself." *United States* v. *Meyers,* 410 F.2d 693, 697 (2d Cir.), cert. denied, 396 U.S. 835, 90 S. Ct. 93, 24 L. Ed. 2d 86 (1969);

---

[10] The *Allen* charge *(Allen* v. *United States,* 164 U.S. 492, 501, 17 S. Ct. 154, 41 L. Ed. 528 [1896]) is the federal equivalent of the "Chip Smith" charge. See *State* v. *Walters,* 145 Conn. 60, 64, 138 A.2d 786, cert. denied, 358 U.S. 46, 79 S. Ct. 70, 3 L. Ed. 2d 45 (1958).

see also *United States* v. *Robinson,* 560 F.2d 507, 517–18 (2d Cir. 1977), upholding the use of the *Allen* charge although the judge knew of an eleven to one deadlock and knew the identity of the dissenter.

The court did not err in giving the supplemental "Chip Smith" charge in these circumstances.

## V

### EXCLUSION OF JUROR TESTIMONY

The jury returned their verdict on July 20, 1977. In accordance with traditional procedure, each juror was called by name and asked to remain standing while the verdict was delivered. The court clerk asked whether a verdict had been reached, and the foreman replied that it had. The clerk then stated: "Ladies and gentlemen of the jury, look upon the accused, you that have been sworn. What say you as to Case Number 12,468, Connecticut versus Bernard Avcollie. Is Bernard Avcollie guilty of the crime of Murder, in violation of Section 53a-54a of the Connecticut General Statutes, or not guilty?" The foreman replied "[h]e is guilty," and no juror took exception to the verdict. Defense counsel immediately asked that the jury be excused, and the court excused the jury. The court then granted the defendant's motion for acquittal and the jury were discharged.

As previously noted, this court set aside the judgment of the trial court, reinstated the verdict, and remanded the case with direction to render judgment that the defendant was guilty and to impose sentence. After the remand, the defendant attempted to bring to the trial court's attention for

the first time a claim that the original jury verdict was not unanimous. In support of this claim, the defendant proposed to call juror Edith Cass to testify that her vote was the result of ill health and coercion by her fellow jurors. The trial court refused to hear this testimony, stating in its memorandum of decision that it was "limited to the specific direction of the [Supreme Court] mandate as interpreted in the light of the opinion. *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* 146 Conn. 556, 561 [153 A.2d 453 (1959)]. In carrying out the mandate the Superior Court may not render a new or different judgment. *Mazzotta* v. *Bornstein,* 105 Conn. 242, 244 [135 A. 38 (1926)]. Compliance means that the direction is not deviated from. The trial court cannot adjudicate rights and duties not within the scope of the remand. *Nowell* v. *Nowell,* 163 Conn. 116, 121 [302 A.2d 260 (1972)]." The trial court was correct in not going beyond the scope of the remand.

Furthermore, the defendant's offer of proof concerns either the personal reasons for Mrs. Cass' vote or the deliberative process itself. In *Aillon* v. *State,* 168 Conn. 541, 550, 363 A.2d 49 (1975), we announced a rule concerning juror testimony " 'which excludes, as immaterial, evidence as to the expressions and arguments of the jurors in their deliberations and evidence as to their own motives, beliefs, mistakes and mental operations generally, in arriving at their verdict.' McCormick, Evidence (2d Ed.) § 68, p. 148." Testimony concerning a juror's illness or the persuasive tactics of fellow jurors is clearly excluded under this rule, and it would have been highly improper to allow testimony of the sort proposed by the defendant. *Aillon* v. *State,* supra, 550 n.3.

Finally, we note that the defendant failed to move for the jury to be polled,[11] but rather moved to excuse the jury immediately after the verdict was announced. The decision to poll the jury is discretionary with the court; *State* v. *Tucker,* 181 Conn. 406, 420, 435 A.2d 986 (1980); however, we are reluctant to review a claim that a verdict is not unanimous when trial counsel, who observed the jury when the verdict was delivered, saw no reason to request a poll at that time.

There is no error.

In this opinion the other judges concurred.

---

[11] Practice Book, 1963, § 2280, now Practice Book, 1978, § 869.