STATE OF CONNECTICUT *v.* NORMAN P. HIGGINS
(12315)

PETERS, C. J., SHEA, DANNEHY, CALLAHAN and M. HENNESSEY, Js.

Argued October 8—decision released December 2, 1986

*Robert F. McWeeny,* with whom was *Louis S. Avitabile,* for the appellant (defendant).

*Walter H. Scanlon,* chief assistant state's attorney, with whom were *Stephen M. Morelli,* certified legal intern, and, on the brief, *John A. Connelly,* state's attorney, for the appellee (state).

SHEA, J. After a jury trial the defendant was convicted of felony murder in violation of General Statutes § 53a-54c.[1] On appeal he claims the trial court erred: (1) in denying his motion to separate his grand jury proceeding from that of his codefendant; (2) in excluding evidence of the circumstances of a crime committed by the codefendant, who testified for the prosecution, claimed to have been similar to the offense charged; (3) in excluding evidence that another witness for the state had been offered money to kill an unidentified person about the time the victim was murdered; (4) in permitting the codefendant to be recalled during the state's case in chief for the purpose of correcting his previous testimony; (5) in the manner in which it instructed the jury upon the inference that could be drawn from the possession of recently stolen property that the possessor had participated in the theft; and (6) in charging upon the interest of the accused in the outcome of the trial in relation to the credibility of his testimony. We find no error.

The briefs indicate no dispute concerning the facts the jury could reasonably have found from the evidence

---

[1] "[General Statutes] Sec. 53a-54c. FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

supporting the verdict. According to the testimony of an accomplice, David Odom, he and the defendant planned to rob any homosexual person whom they might encounter. On the evening of December 28, 1980, Odom and the defendant, in accordance with their plan, went to a location in downtown Waterbury where they remained until the murder victim drove up in a Volkswagen. After a conversation relating to homosexual acts, Odom and the defendant entered the car, and the victim drove them to his apartment.

At the apartment the three men had something to eat. The victim then proceeded to cut Odom's hair. Some time thereafter Odom seized the victim and held him, while the defendant struck him several times with a hatchet he carried under his coat. The victim was also stabbed with a knife. The wounds from both weapons caused his death.

Odom and the defendant took from the victim's apartment some cash and several items of personal property, which they loaded into his car. They returned to the YMCA where they had been residing, packed their bags, and departed that night for Florida in the victim's car.

At trial the defendant admitted that on the night of the murder he had left Waterbury and had traveled to Florida with Odom, who informed him of the murder. He also admitted possessing and selling some personal property of the victim, claiming to have received it from Odom. The defendant denied, however, that he had been involved in killing the victim.

I

The grand jury in one proceeding returned a single indictment charging both Odom and the defendant with felony murder occurring during a robbery in violation of § 53a-54c. The defendant claims that the denial of

his motion for a separate grand jury proceeding violated his constitutional right of confrontation because the evidence submitted to the grand jury included Odom's confession to the police implicating the defendant in the crime. His inability to question Odom, who did not testify at the grand jury proceeding, made it impossible for the defendant to contest the credibility of the confession, which he claims was the only evidence before the grand jury that implicated him in the murder.

The defendant attempts to analogize his predicament to that of the defendant in *Bruton* v. *United States,* 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), where it was held that the admission of the confession of a codefendant at a joint trial violated the right of confrontation established by the sixth amendment to our federal constitution. See *State* v. *McLucas,* 172 Conn. 542, 560, 375 A.2d 1014, cert. denied, 434 U.S. 855, 98 S. Ct. 174, 54 L. Ed. 2d 126 (1977). There is, however, no such right of confrontation at a grand jury proceeding under our federal constitution. In *Costello* v. *United States,* 350 U.S. 359, 363, 76 S. Ct. 406, 100 L. Ed. 397 (1956), it was held that a grand jury indictment should not be quashed simply because all of the evidence at the proceeding was in the nature of hearsay. The grand jury procedure used in the federal courts does not allow a defendant to be present during the proceeding unless called to testify, and thus provides no opportunity for him to confront the witnesses against him. Fed. R. Crim. P. 6 (d); 1 C. Wright, Federal Practice and Procedure § 105. "Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence . . . ." *United States* v. *Calandra,* 414 U.S. 338, 345, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974).

The defendant urges that we adopt a different rule with respect to the right of confrontation before a grand jury in view of our customary practice of permitting a defendant to attend the grand jury proceeding and to question witnesses offered by the state. *State v. Hamlin,* 47 Conn. 95, 104–105 (1879). Although this practice has been imprecisely referred to as a "right" of a defendant; *State v. Stallings,* 154 Conn. 272, 282, 224 A.2d 718 (1966); it is simply a procedure, ordinarily salutary, "grounded upon sound judicial discretion which could be exercised to exclude the defendant for good cause." *State v. Avcollie,* 188 Conn. 626, 632–33, 453 A.2d 418 (1982), cert. denied, 461 U.S. 928, 103 S. Ct. 2888, 77 L. Ed. 2d 299 (1983); *State v. Menillo,* 159 Conn. 264, 278, 268 A.2d 667 (1970).

Even where we have found an abuse of discretion in excluding a defendant from the grand jury proceeding, we have refused to overturn a conviction in the absence of a showing of harm. *State v. Avcollie,* supra, 633. This defendant cannot demonstrate any harm from the joint grand jury proceeding because the confession of Odom, the accomplice, would have been available even to a separate grand jury summoned, in accordance with his motion, to consider only the charge against the defendant. At such a separate proceeding he could not have objected to the presentation of Odom's confession, nor is it likely that he would have had an opportunity to question Odom, who never became a witness at the joint grand jury proceeding. The fact that Odom's confession would not have been admissible at a trial does not preclude its use by the grand jury in ascertaining probable cause. Courts have frequently sanctioned such findings when based upon hearsay deemed to be reliable. *Jones v. United States,* 362 U.S. 257, 269, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960); *State v. Daley,* 189 Conn. 717, 725, 458 A.2d 1147 (1983); 1 W. LaFave, Search and Seizure § 3.2 (d).

In any event, the defendant's claim that hearsay evidence was used against him in the indicting process does not implicate a violation of any of his rights so as to warrant remanding the case to redetermine whether there is probable cause to prosecute him, when his guilt has already been found by a petit jury beyond a reasonable doubt. *United States* v. *Mechanik,* 475 U.S. 66, 106 S. Ct. 938, 89 L. Ed. 2d 50 (1986); *State* v. *McGann,* 199 Conn. 163, 169, 506 A.2d 109 (1986).

## II

The defendant claims error in three rulings on evidence. We find none of the rulings to have been erroneous and, therefore, need not consider their effect on the outcome of the trial.[2]

## A

Before beginning his cross-examination of Odom, the defendant sought a ruling by the court as to whether he might inquire into the underlying circumstances of a 1977 incident in which Odom had been arrested for robbery in the first degree. Odom had pleaded guilty and had been convicted of two offenses resulting from this arrest, larceny in the second degree by theft of a motor vehicle in violation of General Statutes § 53a-123 (a) (1),[3] a felony, and physically threatening another person with imminent serious physical injury in violation of General Statutes § 53a-62 (a) (1),[4] a class A misdemeanor. The defendant claimed that in the occurrence upon which these convictions were based Odom

---

[2] Another claim, that the court had erroneously excluded certain admissions of the witness David Odom, though briefed, was withdrawn during argument. It appears that these statements were admitted in evidence.

[3] General Statutes (Rev. to 1979) § 53a-123 provides in part: "(a) A person is guilty of larceny in the second degree when: (1) The property consists of a motor vehicle . . . ."

[4] General Statutes § 53a-62 provides in part: "(a) A person is guilty of threatening when: (1) By physical threat, he intentionally places or attempts to place another person in fear of imminent serious physical injury . . . ."

had drawn a knife upon the driver of a car from whom he had hitchhiked a ride and thus had stolen the car. The court ruled against the offer of evidence concerning the facts underlying the convictions, but did authorize use of the larceny conviction itself, a felony, for the purpose of impeachment. See *Heating Acceptance Corporation* v. *Patterson,* 152 Conn. 467, 471–72, 208 A.2d 341 (1965). The defendant excepted to the ruling.

The primary focus of the defendant's argument at trial for the admissibility of the circumstances of the 1977 stolen car incident related to Odom's credibility as a witness. This claim, that inquiry into the facts underlying a conviction beyond the bare facts contained in the judgment of conviction should be permitted for impeachment purposes, has not been briefed on appeal and must be deemed abandoned. *McLaughlin Ford, Inc.* v. *Ford Motor Co..* 192 Conn. 558, 559–60, 473 A.2d 1185 (1984). See C. Tait & J. LaPlante, Connecticut Evidence § 7.21 (d), p. 113. The defendant also mentioned, however, that the evidence was admissible as similar misconduct tending to prove that Odom had murdered the victim of the 1980 crime without assistance. It is this ground for admissibility that the defendant urges on appeal.

"Evidence is relevant if it has any tendency in reason to prove or disprove any disputed fact that is of consequence to a determination of the matter in issue." *State* v. *Briggs,* 179 Conn. 328, 332, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980). Logically relevant evidence, however, may be excluded if its probative value is outweighed by its unfairly prejudicial effect. *State* v. *Ibraimov,* 187 Conn. 348, 352, 446 A.2d 382 (1982). Various factors, such as the likely effect of the evidence upon the emotions of the jury, its tendency to create side issues and unfair surprise, should be considered. *State* v. *DeMatteo,* 186

Conn. 696, 702–703, 443 A.2d 915 (1982). The trial court is given broad discretion in deciding the relevancy of evidence. *State* v. *Briggs,* supra, 333.

In this case the proffered circumstances of the 1977 car theft by Odom have very little bearing upon the principal disputed issue at trial, whether the defendant participated in the robbery that resulted in the murder. Where evidence of other crimes is admitted to prove that the person who performed one offense also committed another, the methods used must be " 'so unusual and distinctive as to be like a signature.' " *State* v. *Ibraimov,* supra, 354, quoting C. McCormick, Evidence § 157. Odom's taking of another vehicle by threatening the driver with a knife, as described in the defendant's offer of proof, bears no such unique relationship to the present crime as to have any significant probative value upon the issue of whether the defendant participated in the crime of felony murder. That he committed a crime of violence by himself on that occasion is of no particular significance in proving whether he acted without assistance from the defendant on this occasion. In addition, the facts concerning the 1977 incident were disputed. We find no error in the trial court's exercise of discretion to exclude such evidence.

B

During the cross-examination of another witness for the state, the defendant sought to elicit testimony that the witness, about a week before the murder, had "bragged" that a "guy from OTB was going to give [him] $2000 to kill someone after the holidays." The court sustained the state's objection to such testimony and the defendant excepted.

At trial the defendant claimed the evidence to be admissible for impeachment of the witness and also to show that the witness might have had a motive to kill

the victim. On appeal the defendant urges only the latter ground, relying on the principle that "[i]t is always competent for a defendant to give evidence tending to show that another committed the crime with which the defendant has been charged." *State* v. *Hill,* 196 Conn. 667, 674, 495 A.2d 699 (1985). In the absence of an offer to prove a relationship between the "someone" referred to in the purported statement of the witness and the murder victim, the evidence was properly excluded as too remote.

## C

Odom testified that the defendant had provided the hatchet used in the murder and had also carried it under his coat and struck the victim with it. Just before the close of its case in chief, the state learned that the defendant planned to present a witness, Santos Estrada, who would testify that he had given the hatchet to Odom. When confronted by the state's attorney with this discrepancy, Odom admitted that he had received the hatchet from Estrada. The state then recalled Odom to the witness stand for the purpose of changing his original testimony concerning the origin of the hatchet. The court overruled the defendant's objection, and an exception was noted. Odom then testified that Estrada had given him the hatchet the day before the murder and that it had been transferred to the defendant on the night of the murder. He explained that he had lied previously because he had not wanted to involve Estrada or bring him to the attention of the police. Odom continued to maintain, however, that the defendant had used this hatchet to strike the victim.

The defendant contends on appeal that it was improper to permit Odom to be recalled during the state's case in chief for the purpose of changing his testimony about the source of the hatchet in anticipation of Estrada's contradiction of the original account. He

cites several cases prohibiting the impeachment of a witness by the party calling him to testify. See *State v. McCarthy,* 197 Conn. 166, 177, 496 A.2d 190 (1985); *State v. Jones,* 166 Conn. 620, 622, 353 A.2d 764 (1974); *State v. Mitchell,* 169 Conn. 161, 164–65, 362 A.2d 808 (1975). We have recently abandoned the traditional rule against impeachment of one's own witness on which the defendant relies. *State v. Graham,* 200 Conn. 9, 17, 509 A.2d 493 (1986). Even if we still adhered to the rule, it would not be applicable where the state learned, after the witness had testified, that his testimony was not entirely truthful. It is undoubtedly the duty of the state's attorney "to ensure that all evidence tending to aid in the ascertaining of the truth be laid before the court, whether it be consistent with the contention of the prosecution that the accused is guilty." *State v. Moynahan,* 164 Conn. 560, 568, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973). Although the defendant suggests that the state could have fulfilled this obligation by recalling Odom in rebuttal after Estrada had testified, we can discern no more unfairness in the procedure followed by the state than in the familiar tactic employed by defendants of disclosing prior convictions on direct examination to soften the impact their revelation during cross-examination by the state might otherwise entail.

## III

The defendant claims two errors in the charge to the jury: (1) that the instruction that an inference of participation in the theft could be drawn from the defendant's possession of the victim's property should have been balanced by an instruction upon an alternative inference that the defendant might have been guilty only of receiving stolen property; and (2) that the comment upon the interest of an accused in the outcome of the trial imposed a higher level of scrutiny on the defendant's testimony than on that of other witnesses,

such as the police officers and the accomplice who testified for the state, and thus infringed upon the constitutional right to testify.

### A

"[T]he possession of property recently stolen, if unexplained and standing alone or without other facts pointing to a contrary conclusion, will justify the trier in drawing an inference that the possessor stole the property, and the inference may be sufficiently strong to warrant a conviction of a charge of theft." *State* v. *Palkimas*, 153 Conn. 555, 558–59, 219 A.2d 220 (1966); *State* v. *Donnelly*, 124 Conn. 661, 663, 2 A.2d 214 (1938). The defendant does not challenge this principle but maintains that the instruction upon it "ignored an equally reasonable inference that the defendant was guilty of possession of stolen property," leaving the jury with only the inference of participation in the theft. Essentially the same claim was expressed in the exception to the charge at trial.

In the context of the whole charge[5] on the defendant's admitted possession of some of the victim's prop-

---

[5] The court charged the jury as follows:

"In this case we have had testimony and evidence regarding the possession of stolen property stolen from [the victim] including—there were a great many items as you well know—but including among other items a diamond ring that was worn by the defendant which he had cut from his finger and was subsequently pawned. That was State's Exhibit 40. State's Exhibit 48, the silver ring with the turquoise and black stones in it, and the Volkswagen itself. That is three of the many items that it could be determined that Mr. Higgins had possession of.

"All right. It's the law in Connecticut that possession of property recently stolen can be accepted by any reasonable explanation for such possession or without facts pointing to a contrary conclusion that such possession would justify the jury in drawing an inference that the possessor stole the property, that is, that he took part as a principal in the original theft of the property. That is an inference that may be drawn by the jury. And if you find someone who is in possession of stolen property, you may, you don't have to, you may not be able to, but you may draw an inference that if he possesses it, that did he get it at the scene? Was he a party to the theft

erty, it is quite clear that the court did not suggest that participation in the theft was the only possible inference to be drawn. The court referred only to a "permissible inference" and not to a "presumption." See *Sandstrom* v. *Montana,* 442 U.S. 510, 524, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979); *State* v. *Williams,* 199 Conn. 30, 34–36, 505 A.2d 699 (1986). Permissive language was used throughout this portion of the charge. The court indicated that the jury could accept the defendant's explanation of his possession of certain items, "thereby precluding the drawing of any inference that the defendant took part in the original theft of the articles at the scene of the crime, or by rejecting the explanation as not being reasonable, and then you may draw the inference that the defendant did take part in the original theft, *or you may neither accept nor reject the inference and thereby attach no significance at all to the possession.*" (Emphasis added.) As the trial court indicated in declining to revise the charge by men-

itself? Reverting back to the incident that occurred in the house of [the victim], can you infer that he was present as a result of possessing these things?

"In this case the defendant took the stand and he offered certain explanations how these and various other items stolen from [the victim] came into his possession. You the jury can accept these explanations as being reasonable and thereby precluding the drawing of any inference that the defendant took part in the original theft of the articles at the scene of the crime, or by rejecting the explanation as not being reasonable and then you may draw the inference that the defendant did take part in the original theft, or you may neither accept nor reject the inference and thereby attach no significance at all to the possession. The determination is entirely within your discretion as triers of the fact. But if you're going to draw any inferences from this, they must be reasonable inferences and they must be logical inferences, and the inference that you would be drawing, is that from the fact that he had possession of stolen goods or you determined that he had possession of stolen goods. Can you infer from that fact that he therefore had something to do with stealing them, that he was there at the time they were stolen. Maybe that is why he has got possession of them. There is a permissible inference. It's not compulsory, it's not necessary that you make it, but if you believe the facts warrant it, that it does indicate and would permit you to draw an inference that he participated in the larceny itself, and if that is a reasonable and logical inference you believe to draw, then you may do so.

tioning an alternative inference that the defendant had received stolen goods in violation of General Statutes § 53a-119 (8), the jury might have been confused by such an instruction, because such a crime was not among the lesser included offenses discussed in the charge. The defendant has never contended that he was entitled to an instruction upon this crime as a lesser included offense. We conclude that this claim of error is without merit.

B

At trial the defendant excepted to the court's instruction on the interest of the accused in the outcome of the trial in relation to the assessment of his credibility by the jury. The only ground stated by the defendant was that such an instruction denigrates the right of an accused under article first, § 8, of our state constitution "to be heard by himself." He also referred to our footnote comment in *State* v. *Kurvin,* 186 Conn. 555, 570 n.3, 442 A.2d 1327 (1982), indicating that this court may in the future, especially in the case of a material variation in the language used in such an instruction from that we have previously approved, reconsider the question of "whether such a reference in the charge amounts to a violation of the defendant's due process rights either under the state or federal constitution."

The defendant claims that the language used in this portion of the charge[6] did deviate from that we have approved for such an instruction in previous cases. No such claim was raised, however, at the time the defend-

---

[6] "Now, as you know, the defendant in this case, Mr. Higgins, did take the witness stand and I would just say a word to you about the credibility of the testimony of an accused when he takes the witness stand.

"In weighing the testimony that the defendant himself has given as a witness, you should apply the same principles by which the testimony of every other witness is tested. And that necessarily involves the consideration of his interest in the outcome of the particular trial. You will also consider the importance to him of the outcome of the trial and his motive, if

ant excepted to the charge, when he relied solely upon the state constitutional "right to be heard by himself" as barring any comment upon the interest of an accused who chooses to testify. Despite the absence of a specific exception to the form of the instructions, we have examined the nuances of language relied upon and find no significant variation from those we have approved previously. *State* v. *Mack,* 197 Conn. 629, 636–38 n.8, 500 A.2d 1303 (1985); *State* v. *Avcollie,* 188 Conn. 626, 636–38, 453 A.2d 418 (1982), cert. denied, 461 U.S. 928, 103 S. Ct. 2088, 77 L. Ed. 2d 299 (1983); *State* v. *Mastropetre,* 175 Conn. 512, 525, 400 A.2d 276 (1978); *State* v. *Guthridge,* 164 Conn. 145, 151 n.1, 318 A.2d 87 (1972), cert. denied, 410 U.S. 988, 93 S. Ct. 1519, 36 L. Ed. 2d 186 (1973).

Although we have not previously considered the state constitutional claim raised by the defendant, we have frequently reviewed claims that a charge upon the interest of an accused denies him due process of law. "We have repeatedly considered and rejected this constitutional claim." *State* v. *Roos,* 188 Conn. 644, 645, 452 A.2d 1163 (1982). In our previous consideration of the "right to be heard by himself and by counsel" provision of our state constitution, we have declined to construe it as creating a right of hybrid representation at a criminal trial; *State* v. *Gethers,* 197 Conn. 369, 393–94, 497 A.2d 408 (1985); or a right to override counsel's determination that a particular witness should not be called to testify. *State* v. *Davis,* 199 Conn. 88, 91, 506 A.2d 86 (1986). The defendant assumes that this provision establishes a state constitutional right to testify. Such an assumption is doubtful, however, because, at

any, for telling the truth or not telling the truth. An accused person having taken the witness stand stands before you just like any other person and is entitled to the same considerations. He must have his testimony measured in the same way as any other witness including, however, his interest in the verdict you are to render. Okay?"

the time of the adoption of our state constitution in 1818, a defendant was unable to testify as a witness in his own case because of his interest, a disability that was not removed until 1867, when the common law rule was modified by the statutory predecessor of General Statutes § 54-84. *State* v. *Gethers,* supra, 391–93. Even if we were to regard a defendant's state constitutional right to be heard as an additional source of the constitutional right to testify that we have implicitly recognized under the aegis of due process of law provisions of our state and federal constitutions, the scope of the right to testify would not necessarily be changed by virtue of its multiple origin. In any event, the nature of that right would not necessarily be so enhanced as to preclude fair comment upon the interest of an accused.

We perceive no unfairness in the instruction given, particularly in the context of this case where the trial court, in addition to general instructions to consider the interest of any witness in weighing his testimony, also gave special instructions upon the credibility of accomplices, police officers and experts, who had testified for the state. We remain of the view that fair comment upon the interest of an accused, such as that in this case, violates no constitutional right and is not otherwise erroneous. *State* v. *Mack,* supra, 637–38.

There is no error.

In this opinion the other justices concurred.