[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. NATURE OF THE PROCEEDINGS CT Page 2825
On March 29, 1982, a New Haven jury of six found the petitioner guilty of various offenses and the court subsequently sentenced him to a term of 19 to 38 years in the custody of the Commissioner of Corrections. The Connecticut Supreme Court affirmed the petitioner's conviction on appeal. State v. Watley, 195 Conn. 485 (1985).
The petitioner then filed a pro se petition for writ of habeas corpus, which culminated with the filing of his fourth and final amended petition for writ of habeas corpus on November 18, 1988. In his final amended petition for writ of habeas corpus, the petitioner claimed that the jury array selection procedures mandated by Connecticut General Statutes Section 51-220 violated his constitutional rights in that they ordered a disproportionate number of jurors to be drawn from small, predominantly white towns in the Judicial District, and excluded black jurors who lived primarily in the underrepresented urban areas.
Following an evidentiary hearing, the habeas court, Axelrod, J., found that the petitioner had met the procedural standard of deliberate bypass which at that time, governed determinations of procedural default, but denied petitioner's substantive claims related to equal protection.
The petitioner subsequently filed an appeal of the habeas court's dismissal of his petition for writ of habeas corpus with the Connecticut Supreme Court. On appeal, the state argued that the proper standard for review for issues related to a procedural default in Connecticut state courts should be the cause and prejudice standard first elucidated by the United States Supreme Court in Wainwright v. Sykes,433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).
The Connecticut Supreme Court affirmed the finding of the habeas court but in doing so applied the cause and prejudice standard to state court procedural defaults:
 We conclude, contrary to the habeas court's view, that the appropriate standard for reviewability in a habeas CT Page 2826 corpus proceeding of constitutional claims not adequately preserved at trial because of a procedural default, such as failure to challenge the array is the Wainwright (v. Sykes, 433 U.S. 72 (1977)) standard of `cause and prejudice' as the state contends. We also decide that the petitioners have not satisfied that standard. . .Because we conclude that habeas review is precluded by the failure to file challenges to the array before trial, as required by Section 811, we do not address the merits of the equal protection claim of the petitioners.
Johnson v. Commissioner, 218 Conn. 403, 409 (1991).
The petitioner then filed a Motion for Reargument or Reconsideration with the Connecticut Supreme Court on the grounds that his case did in fact present facts which demonstrate that he can meet the `cause' standard adopted by the court in Johnson. Specifically, the petitioner alleged that trial counsel had been unable to raise the jury array claim before trial because of interference by a state official, a factor recognized the the United States Supreme Court as constituting cause for a procedural default. Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397
(1986). On June 6, 1991, the court denied the request for reargument but remanded the case to this Court for further proceedings, stating that: "(O)n the basis of the present record. . .we are unable to resolve the issue of whether there was good cause for the procedural default of the petitioner in failing to present his challenge to the array before trial. . ." Watley v. Commissioner, 219 Conn. 231, 233 (1991). The court observed that "(T)he habeas court made no findings with respect to whether any such interference occurred or whether it may have prevented the petitioner from proceeding with a successful challenge to the array. . ." Id. at 233.
II. DUTIES OF THE COURT ON REMAND
As stated in State v. Avcollie, 188 Conn. 626, 643
(1982), on remand, a court is:
 limited to the specific direction of the (Supreme Court) mandate as interpreted in the light of the opinion. State Bar Assn. v. Connecticut Bank Trust Co., 146 Conn. 556, 561 (153 A.2d 453 (1959)). In carrying out the mandate the Superior CT Page 2827 Court may not render a new or different judgment. Mazzotta v. Bornstein, 105 Conn. 242, 244 (135 A. 38 (1926)). Compliance means that the direction is not deviated from. The trial court cannot adjudicate rights and duties not within the scope of the remand. Nowell v. Nowell, 163 Conn. 116, 121 (302 A.2d 260 (1972)).
The opinion of the court in directing the remand stated in part as follows:
 Per Curiam. After the issuance of our decision in Johnson v. Commissioner, 218 Conn. 403, A.2d (1991), in which we affirmed judgments dismissing thirty-one habeas corpus petitions, the petitioner Dennis Jackson filed a motion for reargument or reconsideration in which he called to our attention that, in addition to his other claims, this petitioner had presented to the habeas court testimony to the effect that he had been prevented from pursuing a challenge to the jury array at the trial that resulted in his conviction. The attorney representing him at that trial testified in the habeas court that he had filed a motion challenging the array several days before trial but that the trial court had summarily denied the challenge without affording any opportunity to present evidence in support of the challenge. The attorney also testified that he had taken exception to the court's refusal to allow an evidentiary hearing with respect to his array challenge.
. . .
 The habeas court made no findings with respect to whether any such interference occurred or whether it may have prevented the petitioner from proceeding with a successful challenge to the array based upon the impact of General Statutes (Rev. to 1975) Section 51-220 on representation of black or Hispanic people in the pool of jurors available for selection of the jury at his trial. See CT Page 2828 Alston v. Manson, 791 F.2d 255 (2d Cir. 1986). On the basis of the present record, therefore, we are unable to resolve the issue of whether there was good cause for the procedural default of the petitioner in failing to present and effectively pursue his challenge to the array before trial, which we have held bars review on the merits of his claim of minority under-representation in the jury pool.
In following the specific direction of the remand as interpreted in the light of the opinion, it is necessary for this Court to make additional findings of fact and whether such findings of fact would constitute good cause for the procedural default of the petitioner in failing to present and effectively pursue his challenge to the array before trial.
III. ADDITIONAL FINDINGS OF FACT
The Court makes the following additional findings of fact.
The petitioner was represented at his criminal trial by Attorney Max F. Brunswick, who had been appointed to represent the petitioner as a special public defender. At the time of the petitioner's trial, it was Attorney Brunswick's practice to raise challenges to the jury array during the of representation of his clients. He did not raise a jury array challenge on behalf of the petitioner. The reason he did not file such a challenge on behalf of the petitioner was because he had been told by someone from the public defender's office that the public defender's office did not have the money to subpoena the jury commissioners in New Haven County, and without funds to issue subpoenaes, it would have been impossible to go forward on the evidentiary portion of a challenge to the array. Attorney Brunswick had discussed jury array challenges prior to the petitioner's trial with Attorney Steven Frazzini and had reviewed a transcript of a challenge to the array in which Attorney Frazzini had hired an expert witness. Attorney Brunswick had contacted the expert witness prior to the petitioner's trial and asked if the expert would be available in cases handled by Attorney Brunswick because he intended to challenge the jury array. Having been denied funding necessary to present a challenge to the jury array, Attorney Brunswick therefore did not file any challenge to the jury array in the petitioner's criminal trial.
It is the petitioner's claim that the refusal of the public defender's office to provide the petitioner's trial CT Page 2829 counsel with funds necessary to present a timely challenge to the petitioner's jury array constitutes "cause" for the petitioner's procedural default.
IV. LAW
A number of United States Supreme Court decisions have discussed the term "cause" as it relates to a procedural default. In Reed v. Ross, 468 U.S. 1, 82 L.Ed.2d 1,104 S.Ct 290, the court, at 468 U.S. 13, 14, 15, stated in part as follows:
 Because of the broad range of potential reasons for an attorney's failure to comply with a procedural rule, and the virtually limitless array of contexts in which a procedural default can occur, this Court has not given the term "cause" precise content. See Wainwright v. Sykes, supra, at 87, 53 L.Ed.2d 594, 97 S.Ct. 2497. Nor do we attempt to do so here. Underlying the concept of cause, however, is at least the dual notion that, absent exceptional circumstances, a defendant is bound by the tactical decisions of competent counsel.
. . .
 In general, therefore, defense counsel may not make a tactical decision to forgo a procedural opportunity — for instance, an opportunity to object at trial, or to raise an issue on appeal — and then, when he discovers that the tactic has been unsuccessful, pursue an alternative strategy in federal court.
. . .
 On the other hand, the cause requirements may be satisfied under certain circumstances when a procedural failure is not attributable to an intentional decision by counsel made in pursuit of his client's interests. And the failure of counsel to raise a constitutional issue reasonably unknown to him is one situation in which the requirement is met. If counsel has no CT Page 2830 reasonable basis upon which to formulate a constitutional (468 U.S. 15) question, setting aside for the moment exactly what is meant by "reasonable basis," see infra, at 16-18, 82 L.Ed.2d, at 15-16, it is safe to assume that he is sufficiently unaware of the question's latent existence that we cannot attribute to him strategic motives of any sort.
In Amadeo v. Zant, 486 U.S. 214, 100 L.Ed.2d 249,108 S.Ct. 1771 (1988), the court in discussing "cause and prejudice," stated at 486 U.S. 221, 222, in part as follows:
 Petitioner was convicted of murder and criminal attempt to commit theft in the Superior Court of Putnam County, Georgia. While petitioner's direct appeal was pending, an independent civil action involving a challenge to voting procedures in Putnam County was brought in Federal District Court, which found that a memorandum from the District Attorney's Office to the Putnam County Jury Commissioners was intentionally designed to result in underrepresentation of black people and women in the master jury lists from which all grand and traverse (petit) jurors were drawn.
. . .
 Affirming petitioner's convictions and sentences, the Georgia Supreme Court rejected his challenge to the jury on the ground that it came too late. After exhausting his state remedies, petitioner sought a writ of habeas corpus in Federal District Court.
. . .
 A showing that the factual or legal basis for a claim was not reasonably available to counsel or that some interference by officials made compliance impracticable, constitutes cause.
. . . CT Page 2831
 In Wainwright v. Sykes, 433 U.S. 72, 53 L.Ed.2d 594, 97 S.Ct. 2497 (1977), this Court adopted the "cause and prejudice" requirement of Francis v. Henderson, supra, for all petitioners seeking federal habeas relief on constitutional claims defaulted in state court. The Sykes Court did not elaborate upon this requirement, but rather left open "for resolution in future decisions the precise definition of the `cause'-and-`prejudice' standard." 433 U.S., at 87, 53 L.Ed.2d 594, 97 S.Ct. 2497. Although more recent decisions likewise have not attempted to establish conclusively the contours of the standard, they offer some helpful guidance on the question of cause. In Reed v. Ross, 468 U.S. 1, 82 L.Ed.2d 1, 104 S.Ct. 2901 (1984), the Court explained that although a "tactical" or "intentional" decision (486 U.S. 222) to forgo a procedural opportunity normal cannot constitute cause, id., at 13-14, 82 L.Ed.2d 1, 104 S.Ct. 2901, "the failure of counsel to raise a constitutional issue reasonably unknown to him is one situation in which the (cause) requirement is met." Id., at 14, 82 L.Ed.2d 1, 104 S.Ct. 2901. The Court later elaborated upon Ross and stated that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488, 91 L.Ed.2d 397, 106 S.Ct. 2639 (1986). We explained that "a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that `some interference of officials' made compliance impracticable, would constitute cause under this standard. Ibid. (citations omitted).
In support of his claim that the failure of the public defender's office to provide petitioner's trial counsel with funding necessary to present a challenge to the petitioner's jury array constitutes a "objective factor external to the defense which impeded counsel's efforts to CT Page 2832 comply with the state's procedural rule," the petitioner argues in part as follows:
 The testimony of the petitioner's trial counsel clearly demonstrated that "(s)ome interference by officials, Brown v. Allen, 344 U.S. 443, 486 (1953), made compliance impracticable. Id. Accord Amadeo v. Zant, 486 U.S. 214, 108 S.Ct. 1771, 1777 (1988); Smith v. Murray, 477 U.S. 527, 106 S.Ct. 2661, 2667 (1986).
 The uncontradicted evidence adduced at the petitioner's habeas hearing proves that he has demonstrated `cause' for the procedural default of his jury array claim in state court. As noted above, trial counsel testified at the petitioner's habeas hearing that around the time of the petitioner's trial, he regularly raised challenges to the jury array and felt enthusiastic about these challenges. Tr. pp. 10, 12. In this case, the failure of the public defender's office to approve the expenditure of the necessary funds in order for trial counsel to properly prepare and present a successful jury array challenge constitute good cause for the procedural default. If the public defender's office had in fact authorized the necessary funds in order for trial counsel to prepare and present the jury array claim, trial counsel, as evidenced by his testimony, would clearly have done so.
 Applicable to this case is an observation by the court in Huffman v. Wainwright, 651 F.2d 347, 351 (5th Cir. 1981), that:
 "(t)he rule of Sykes is not a mechanical one. It was intended to avoid manipulation on the court system without sacrificing its ability to do justice. If (the petitioner) was prejudicially deprived of a constitutionally selected jury, it is difficult to understand on CT Page 2833 the basis of the facts presented . . .how the purposes of the rule will be served by a refusal to vindicate his fundamental right."
 Under the circumstances presented by this case, in which the actions of the Office of the Public Defender itself caused the petitioner to procedurally default his jury array claim, the petitioner has met both prongs of the Wainwright v. Sykes, 433 U.S. 72 (1977), `cause and prejudice' test.
The Court is not persuaded by that argument.
The issue before the Court is not simply whether, as the petitioner argues, that there was "some interference by officials." The issue before the Court is whether there was "some interference by officials external to the defense that prohibited the petitioner from raising a jury array challenge at trial. The nature of the public defender's office was discussed in Gaines v. Manson, 194 Conn. 510 (1984). This Court does not see a distinction between a public defender who was appointed to represent an indigent defendant and a special public defender who was appointed to represent an indigent defendant such as occurred in the petitioner's underlying trial. This Court is further satisfied that the Office of the Public Defender is not "external to the defense" but rather is a part of the defense.
This Court concludes that the petitioner has failed to show that there was good cause for his failure to raise before trial the claim of unconstitutional jury composition as a result of the actions of the Office of Public Defender not being actions that are external to the defense.
AXELROD, JUDGE